**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

NATHAN COBBS,

        Plaintiff,

   v.

CAMERON WATSON, et al.

      Defendants.

18-cv-3205-SLD-JEH

**PLAINTIFF'S RESPONSE MEMORANDUM**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Nathan Cobbs, through undersigned counsel, hereby submits this response memorandum in opposition to Defendants' Motion for Summary Judgment on the Issue of Exhaustion.

## <u>INTRODUCTION</u>

On December 15, 2017, Defendants Lindsey, Scoggin, and Sheffler assaulted Plaintiff Nathan Cobbs ("Plaintiff" or "Mr. Cobbs") during an escort while he was a handcuffed prisoner at Western Illinois Correction Center ("WIC"), and left him without medical care. Mr. Cobbs submitted an emergency grievance regarding this incident on December 18, 2017, and the warden accepted the grievance as an emergency, but Mr. Cobbs never received any response to that grievance despite his multiple attempts for an answer. Indeed, Mr. Cobbs made clear in his Complaint and in an exhibit filed in support of his Complaint that he never received any response to his emergency grievance, putting Defendants on notice of such issue. (Compl., Dkt. No. 1 at pp. 4, 7; Grievance, Dkt. No 3, at pp. 3-6.) Nevertheless, Defendants now bring a motion for summary judgment ("Motion") asserting that this case should be dismissed because Mr. Cobbs failed to exhaust his administrative remedies.

Defendants have not met their burden here, as the undisputed material facts show that Mr. Cobbs' emergency grievance was not treated as any sort of emergency. Although Mr. Cobbs attempted to follow-up on his grievance with additional grievances, those grievances were denied without any update or information on his December 18, 2017 emergency grievance. Prison officials failed to comply with grievance procedures requiring that Mr. Cobbs' grievance be expedited and responded to within two months, when feasible. Indeed, Sherry Benton, a Chairperson for the Office of Inmate Issues, otherwise known as the Administrative Review Board ("ARB"), testified that an emergency grievance should be processed within a month. Instead, the responses to Mr. Cobbs' grievance did not begin to be prepared until Defendant Sheffler was accused of being involved in another assault in May 2018 of a handcuffed prisoner, which eventually resulted in the prisoner's death and for which Defendant Sheffler was indicted.

Although Defendants may attempt to assert in their reply brief that the Grievance Officer's and warden's responses that were finally prepared in May 2018 were sent to Mr. Cobbs, the undisputed facts show that he never received such responses, and thus was unable to appeal to the ARB. Indeed, Ms. Benton agreed that Mr. Cobbs could not exhaust his administrative remedies without receipt of the response to his grievance. Moreover, both Ms. Benton and Tara Goins, the WIC Grievance Officer, conceded that the relief sought in Mr. Cobbs' grievance would never have been granted.

Only a legal question is presented here, and there are no material issues of disputed fact. The undisputed material facts show that Mr. Cobbs exhausted all remedies which were available to him here. Accordingly, Defendants have failed to meet their burden, and their Motion should be denied, the Defendants' third affirmative defense regarding administrative remedies should be stricken, and Mr. Cobbs' claim should promptly proceed to trial on the merits.

## Response to Defendants' Statement of Undisputed Material Facts

## Undisputed Material Facts

**Defendants' UMF No. 1:** Mr. Cobbs agrees that he is an inmate within the Illinois Department of Corrections ("IDOC") and was incarcerated at the time of the alleged incidents at WIC and at the time he filed the complaint. However, Plaintiff is currently incarcerated at the Menard Correctional Center, not the Lawrence Correctional Center as the Defendants allege.

**Defendants' UMF No. 2:** Mr. Cobbs agrees that Defendant Matthew Lindsey, during all relevant times in Plaintiff's complaint, was a lieutenant at WIC.

**Defendants' UMF No. 3:** Mr. Cobbs agrees that Defendant Scott Scoggin, during all relevant times in Plaintiff's complaint, was a correctional officer at WIC.

**Defendants' UMF No. 5:** Mr. Cobbs agrees that on August 16, 2018, he filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging excessive force by the Defendants on December 15, 2017.

Mr. Cobbs notes that his lawsuit also includes an allegation that the Defendants did not properly facilitate medical care to treat the injuries arising from the Defendants' excessive use of force.  In addition, Mr. Cobbs also alleged in his lawsuit that he never received any response to his December 18, 2017 emergency grievance from WIC.

**Defendants' UMF No. 6:**  Mr. Cobbs agrees that there is a grievance procedure available at his (now former) institution, WIC, when he filed this action and that he completed the grievance process.

**Defendants' UMF No. 7:**  Mr. Cobbs agrees that he alleges that Tara Goins met with him on May 19, 2018 but would not process his emergency grievance.

**Defendants' UMF No. 9:**  Mr. Cobbs agrees that his December 18, 2017 grievance was deemed an emergency by the Chief Administrative Officer (CAO) on January 18, 2018.

**Defendants' UMF No. 12:**  Mr. Cobbs agrees that on December 21, 2017, the ARB received a grievance from him dated December 18, 2017.

**Defendants' UMF No. 13:**  Mr. Cobbs agrees on December 28, 2017, the ARB responded to his grievance dated December 18, 2017, requesting that he provide the original grievance with the counselor's response, a copy of the response to the grievance including the Grievance Officer's response and the warden's response, and provide dates when the incidents occurred.

**Defendants' UMF No. 14:**  Mr. Cobbs agrees that on April 3, 2018 (not on December 21, 2017 which appears to be a typo in Defendants' submission), the ARB received a second grievance from him dated February 15, 2018.

**Defendants' UMF No. 15:**  Mr. Cobbs agrees that his February 15, 2018 grievance (which was, in essence, a re-submission of his December 19, 2017 grievance), was responded to by the Grievance Officer on March 7, 2018, stating that his grievance regarding allegations from

4

December 2017 were not submitted within the 60 days' timeframe.

**Defendants' UMF No. 16:** Mr. Cobbs agrees that the ARB responded to his grievance on April 10, 2018, stating that the grievance was not submitted within the 60 days required under the rules.

## Disputed Material Facts

**Defendants' UMF No. 4:** Mr. Cobbs agrees that Defendant Todd Sheffler was a lieutenant at WIC at the time of the December 15, 2017 incident. However, Plaintiff is without information as to Mr. Sheffler's employment status during the time of the grievance process because Mr. Sheffler was accused of the use of excessive force on a handcuffed prisoner at WIC, Mr. Larry Earvin, on or about May 17, 2018. Mr. Earvin ultimately died of his injuries and Mr. Sheffler was indicted. Indictment, Dkt. No. 1, *United States v. Todd Sheffler, et al.*, No. 19-CR-30067 (C.D. Ill. Dec. 4, 2019), a copy of which is attached hereto as Exhibit 1. As of the date of this Opposition, Mr. Sheffler's criminal case is an ongoing proceeding before the United States District Court for the Central District of Illinois. *Id.*[1]

**Defendants' UMF No. 8:** Mr. Cobbs agrees that he submitted an emergency grievance, No. 18-0055E, relating to the December 15, 2017 incident, but he also submitted the following:

a.  A December 18, 2018 grievance to ARB and the ARB required Mr. Cobbs to obtain action on the part of WIC in order to process this grievance.

b.  After receiving no action from WIC in response to his emergency grievance within approximately 60 days from the submission of his grievance, Mr. Cobbs resubmitted this grievance to prison officials at WIC on February 15, 2018.

c.  WIC denied Mr. Cobbs' February 15, 2018 grievance on March 7, 2018 and ARB affirmed that denial on April 10, 2018.

---

[1] This Court may take judicial notice of civil and criminal case records, including the Indictment and pending criminal suit against Defendant Sheffler. *See United States v. Cohen*, No. 08-3282, 2012 WL 12136034, at *3-4 (C.D. Ill. Sept. 27, 2012) (citing Fed. R. Evid. 201).

      d.      Mr. Cobbs never received WIC's response to his December 18, 2018 grievance and on August 3, 2018, submitted a grievance about the grievance process.

(Declaration of Plaintiff Nathan Cobbs dated Sept. 15, 2020 ("Cobbs Decl."), attached hereto as Exhibit 2, ¶¶ 5-13, 20-26.)

**Defendants' UMF No. 10:**  Mr. Cobbs admits that his December 18, 2017 grievance document shows that it was responded to by the Grievance Officer on May 25, 2018 and concurred by the CAO (here, the warden) on May 29, 2018.  However, Mr. Cobbs denies ever being informed of these decisions, in writing or otherwise.  (Cobbs Decl. ¶¶ 15-20, 25-29, 31-35.)  Indeed, the Defendants' summary judgment papers provide no evidence to support any suggestion this response was delivered to Mr. Cobbs, despite Defendants being on notice from Mr. Cobbs' Complaint that he did not receive any response to his December 18, 2017 grievance.  (Compl. at pp. 4, 7 (stating that "Tara Goins who never sends me a response to the grievance so I can forward this on to Springfield Adm. Review Board"); *see also* Grievance, Dkt. No. 3, at pp. 3-6 (Aug. 3, 2018 grievance stating that, among other things, Mr. Cobbs never received any response to his emergency grievance).

**Defendants' UMF Nos. 11 and 17:**  Mr. Cobbs never received any response to his December 18, 2017 grievance from WIC and therefore was not able to submit that response to ARB.  (Cobbs Decl. ¶¶ 27-29, 33-35.)

### Additional Material Facts

**Plaintiff's AMF 1:**  On December 15, 2017, while Mr. Cobbs was being escorted and was handcuffed, he was physically assaulted and left severely injured and without appropriate medical care for his injuries by Defendants Scoggin, Sheffler, and Lindsey, as described in his Complaint. (Cobbs Dec. ¶ 4; Dkt. No. 1.)

**Plaintiff's AMF 2:**  At the time of the events at issue and at the time that his grievances

6

were submitted, Mr. Cobbs was housed as a prisoner at WIC.  His Living Unit changed several times from about December 15, 2017 through January 29, 2018, in part due to being moved to and from a segregation unit.  From about January 29, 2018 until on or about June 8, 2018, Mr. Cobbs was housed in Living Unit 3A30, a regular housing unit.  On or about June 9, 2018, Mr. Cobbs' Living Unit changed to 3A63 after being held in a receiving unit for a day or so.   Mr. Cobbs' Living Unit changed again on or about June 21, 2018 to a segregation unit where he was housed for about a month, until on or about July 21, 2018.  (Cobbs Decl. ¶ 3; Mr. Cobbs' Living Unit History, attached hereto as Exhibit 3.)

**Plaintiff's AMF 3:**  On or about December 18, 2017, Mr. Cobbs prepared and submitted to prison officials a grievance describing in detail the events of December 15, 2017.  (Cobbs Dec. ¶ 5.)  Specifically, Mr. Cobbs submitted his emergency grievance to the prison officials at WIC for emergency processing, and he also submitted his emergency grievance directly to the ARB. (Cobbs Dec. ¶¶ 5-7; Dec. 18, 2017 Emergency Grievance submitted to WIC, attached hereto as Exhibit 4; Dec. 18, 2017 Emergency Grievance submitted to ARB, attached hereto as Exhibit 5.) A true and correct copy of this emergency grievance was also attached as an exhibit to Mr. Cobbs' Complaint.  (Dkt. No. 3, at pp. 1-2.)

**Plaintiff's AMF 4:**   The ARB rejected Mr. Cobb's December 18, 2017 emergency grievance, instructing him that he needed a response to his grievance from his counselor at WIC, a copy of the Grievance Officer's response and the warden's response, and the dates when the incident occurred.  (Dec. 28, 2017 ARB Return of Grievance of Correspondence, Doc. 0070, attached hereto as Exhibit 6.)  Mr. Cobbs never received any response to his December 18, 2017 grievance from any official at WIC, including the Grievance Officer.  (Cobbs Dec. ¶¶ 25, 27-35.) Further, as Ms. Benton testified, since Mr. Cobbs' grievance was deemed an emergency by the

warden, he was not required to provide a response from a counselor.  (Sept. 17, 2020 Deposition of Sherry Benton ("Benton Dep.") at 90:13-91:12.) [2]

**Plaintiff's AMF 5:**  On January 18, 2018, WIC granted emergency review of Mr. Cobbs' December 18, 2017 grievance. (*See* Ex. 4.)

**Plaintiff's AMF 6:**  The WIC Grievance Officer, Tara Goins, testified that she forwarded Mr. Cobbs' grievance dated December 18, 2018 to WIC's internal affairs shortly after receiving it, sometime in January 2018.  (Sept. 16, 2020 Deposition of Tara ("Goins Dep.") at 104:3-25.) [3]

**Plaintiff's AMF 7:**  Ms. Benton testified that an emergency grievance should go to the front of all the grievances that are waiting to be answered, (Benton Dep. at 90:19-91:6), and that she would typically expect a response to an emergency grievance within a month of its submission. (*Id*. at 71:24-72:11.)

**Plaintiff's AMF 8:**  Meanwhile, approximately 60 days after Mr. Cobbs submitted his December 18, 2018 emergency grievance, Mr. Cobbs still had not received any response to his emergency grievance.  (Cobbs Decl. ¶ 9.)  As a result, Mr. Cobbs submitted another grievance on February 15, 2018 for emergency processing, describing how he was physically assaulted and left severely injured and without appropriate medical care by Defendants back in December.  (*Id*. at ¶¶ 9-10.)

**Plaintiff's AMF 9:**  On March 7, 2018, Ms. Goins rejected Mr. Cobbs' February 15, 2018 grievance as not submitted in the timeframe outlined in Department Rule 504, using a written form to provide this response to Mr. Cobbs.  (Mar. 7, 2018 Grievance Officer Memorandum, attached hereto as Exhibit 9.).  Mr. Cobbs then submitted the February 15, 2018 grievance and form

---

[2] The relevant excerpts from the Benton Dep. is attached hereto as Exhibit 7.
[3] The relevant excerpts from the Goins Dep. is attached hereto as Exhibit 8.

response to the ARB. (Cobbs Decl. ¶¶ 9-10.) On April 10, 2018, the ARB affirmed that decision, instructing Mr. Cobbs that "this issue will not be addressed further." (*Id*. at ¶ 13; April 10, 2018 ARB Return of Grievance or Correspondence, attached hereto as Exhibit 10.)

**Plaintiff's AMF 10:** When she rejected Mr. Cobbs' February 15, 2018 grievance, Ms. Goins did not recognize that it was a renewal of his December 18, 2017 grievance, and instead felt that Mr. Cobbs was submitting a whole new grievance. (Goins Dep. at 65:1-25.) Ms. Goins made no effort to determine whether the February 15, 2018 submission was related to the December 18, 2017 grievance. (*Id*. at 60:1-21.) Specifically, Ms. Goins testified that she had a copy of Mr. Cobbs' December 18, 2017 emergency grievance still in her possession at the time that she prepared her March 7, 2018 rejection and could have compared the grievances, but she did not do so. (*Id*.)

**Plaintiff's AMF 11:** Ms. Goins stated that one of the ways inmates follow up on their grievances is by filing duplicate grievances after not receiving a response to the original grievance. (Goins Dep. at 64:13-25.) Ms. Benton testified that Ms. Goins should have recognized that Mr. Cobbs was submitting his grievance again because he had not received a response and that Mr. Cobbs should have been informed that his emergency grievance was still pending and he would receive a response. (Benton Dep. at 87:5-88:23.) Instead, Mr. Cobbs was informed by both Ms. Goins and the ARB that the matter would not be addressed any further. (*Id*. at 56:19-58:2; Goins Dep. 59:12-25, 60:22-61:13; Ex. 9; Ex. 10; Cobbs Decl. ¶¶ 10-13.)

**Plaintiff's AMF 12:** More months passed, and Mr. Cobbs still had not received any response to his December 18, 2017 emergency grievance from the officials at WIC. (Cobbs Decl. ¶ 14.) Meanwhile, on May 17, 2018, Defendant Sheffler allegedly conspired with other officers to assault another prisoner at WIC who was handcuffed, Mr. Larry Earvin, resulting in bodily

injury to Mr. Earvin. (*See* Indictment, Ex. 1, at ¶¶ 6-8.) This prisoner later died of his injuries and Defendant Sheffler was indicted. (*Id*.)

**Plaintiff's AMF 13:** Around this time and around the time of Defendant Sheffler's alleged assault of a second handcuffed prisoner at WIC, in May 2018, Ms. Goins received a response from internal affairs on Mr. Cobb's December 18, 2017 emergency grievance. (Goins Dep. 41:24-42:4.) Ms. Goins testified that she had been waiting for about four months to receive a response from internal affairs on Mr. Cobbs' grievance. (*Id*. at 67:5-68:12.) Ms. Goins further testified that she generally follows up with internal affairs within 30 to 45 days after making a submission. (Goins Dep. at 41:25-43:4.) However, Ms. Goins does not recall whether she did so with Mr. Cobbs' grievance and there is no record of Ms. Goins following up with internal affairs. (*Id*. at 43:7-46:16.) Ms. Benton also testified that the fact that Mr. Cobbs' emergency grievance took over four months for the Grievance Officer to respond was unusually long and not typical. (Benton Dep. at 71:1-23.)

**Plaintiff's AMF 14:** Ms. Goins testified that she is not privy to what internal affairs did to investigate Mr. Cobbs' grievance, but was instead provided a written response about the investigation that she then provided in her report. (Goins Dep. at 68:13-25, 72:4-12.)[4] Specifically, Ms. Goins was told that Lieutenant Durrell of internal affairs interviewed "all staff involved" in the alleged assault of Mr. Cobbs and the allegations were denied. (*Id*. at 69:1-11.) Ms. Goins did not speak with any of the officers involved in the grievance and did not ask internal affairs any questions about the response received to her submission. (*Id*. at 72:4-12.)

---

[4] In their discovery responses, the Defendants stated that no written documents about the investigation exists and that no investigation in fact occurred. After Ms. Goins' testimony, counsel for the Defendants affirmed the Defendants' response. *See* Defense Counsel's Sept. 17, 2020 email, attached hereto as Exhibit 11.

**Plaintiff's AMF 15:** After Ms. Goins received the response from internal affairs, Ms. Goins called Mr. Cobbs for an in-person meeting to discuss his emergency grievance. (Cobbs Decl. ¶ 15; Goins Dep. 69:14-70:1.) At that time, Ms. Goins showed Mr. Cobbs a copy of his emergency grievance and asked him if he had filed it, and Mr. Cobbs confirmed that he had filed the grievance. (Cobbs Decl. ¶¶ 16-17.) Ms. Goins informed Mr. Cobbs that a decision would be made on his grievance and that the decision would be sent to him. (Cobbs Decl. ¶ 18; Goins Dep. 71:6-12.) On May 25, 2018, within eight days of Defendant Sheffler's alleged assault of Mr. Earvin, Ms. Goins issued a recommendation that Mr. Cobb's emergency grievance be found moot. (May 25, 2018 Grievance Officer Report and May 29, 2018 CAO's Response, attached hereto as Exhibit 12.) However, after his May 19, 2018 meeting with Ms. Goins (where Ms. Goins informed him that a decision would be made on his grievance), Mr. Cobbs never saw or heard from Ms. Goins again regarding his grievance. (Cobbs Decl. ¶ 19.)

**Plaintiff's AMF 16:** Through discovery in this case, Mr. Cobbs eventually learned that Ms. Goins recommended on May 25, 2018 that his grievance be denied, and that Ms. Goins' recommendation was accepted by the WIC warden on May 29, 2018. (Cobbs Decl. ¶¶ 30-35; Ex. 12.) Mr. Cobbs otherwise had no knowledge of these decisions. (Cobbs Dec. ¶¶ 33-35.)

**Plaintiff's AMF 17:** Ms. Benton testified that she also did not receive the Grievance Officer's report on Mr. Cobbs' emergency grievance. (Benton Dep. at 76:12-15.) Ms. Benton testified that if she had received the Grievance Officer's report, she would have sought clarification on whether internal affairs interviewed just the three Defendants that were accused of assaulting Mr. Cobbs, or whether they interviewed any other staff that Mr. Cobbs indicated were present. (*Id.* at 79:4-80:6.) She would have also sought other information to evaluate Mr. Cobbs' grievance, including incident reports, medical records, disciplinary records, among other things. (*Id.* at 80:14-

11

81:22.)  Ms. Benton would have taken these steps to make sure that staff did their job and investigated Mr. Cobbs' claim.  (*Id*. at 83:5-13.)

**Plaintiff's AMF 18:**  Ms. Benton also testified that there are situations where notable grievances, such as multiple grievances concerning issues with the same officer, have caused her to request an investigation into staff conduct, such as an investigation by internal affairs.  (Benton Dep. at 26:23-27:22.)  Ms. Benton recalled doing this in the past with regard to a male officer and it resulted in an inquiry by internal affairs and with the employee review board regarding that officer's history.  (*Id*. at 27:7-29:18.)[5]

**Plaintiff's AMF 19:**  Ms. Goins has no personal knowledge as to whether the response to Mr. Cobbs' December 18, 2017 grievance was mailed to him or whether he actually received the response.  (Goins Dep. 73:22-76:14.)  Ms. Goins stated that she had clerical staff come and go in May of 2018 when Mr. Cobbs' response was supposedly mailed to him.  (*Id*. at 22:16-23:2.)  As a result, Ms. Goins could not testify as to who supposedly mailed the response to Mr. Cobbs or whether it could have been her.  (*Id*. at 76:3-14.)  According to a handwritten notation on the response, a notation of "3A30" was written on the page to indicate that it should be directed to Mr. Cobbs in the institutional mail, but Ms. Goins did not know who wrote the notation.  (*Id*. at 75:1-

---

[5] During Ms. Benton's deposition, counsel for Plaintiff attempted to inquire from Ms. Benton whether she had knowledge of any other grievances concerning Defendant Sheffler, particularly concerning the alleged assault of Mr. Earvin which led to Mr. Eavin's death.  (Benton Dep. 100:7-23.)  Mr. Cobbs' counsel attempted to probe issues related to the delay in the resolution of Mr. Cobbs' emergency grievance here, the lack of receipt of the response by Mr. Cobbs, and whether receiving Mr. Cobbs' appeal of the denial of his emergency grievance may have prompted Ms. Benton and/or the ARB to make any further inquiry into Defendant Sheffler, as stated on the record during the deposition.  (*Id*. at 101:3-103:8.)  However, Defendant Sheffler's counsel, who is also Ms. Benton's counsel for the purposes of her deposition in this matter, instructed Ms. Benton not to respond to any questions on the topic, and Ms. Benton followed that advice, preventing any inquiry by Mr. Cobbs into these relevant, disputed, material facts.  (*Id*. at 100:14-17; 101:7-13; 102:7-16.)

76:14.)  Ms. Goins testified that if inmates state that they did not receive a response to their grievance it can be resent, but she did not have any records or recollection that Mr. Cobbs had any response resent to him.  (*Id*. at 81:15-25.)

Plaintiff's AMF 20:  Ms. Benton testified that without being provided the response to his December 18, 2017 grievance, Mr. Cobbs was not provided an opportunity to exhaust his administrative remedies.  (Benton Dep. at 110:13-111:12.)

Plaintiff's AMF 21:  Ms. Goins identified Mr. Cobbs' December 18, 2018 grievance as "moot" because she had no ability to grant the relief Mr. Cobbs requested, which was a transfer and criminal charges brought against the officers.  (Goins Dep. at 71:13-72:3.)  Ms. Benton confirmed that she had no authority to grant Mr. Cobbs' requested relief either.  (Benton Dep. at 89:4-90:6.)

Plaintiff's AMF 22:  Ms. Goins never approved or upheld a grievance regarding the use of force.  (Goins Dep. 93:15-18.)  Ms. Goins did not recall and does not think that the Warden has ever disagreed with her recommendation.  (Goins Dep. 90:11-93:2.)

Plaintiff's AMF 23:  Having received no response to his December 18, 2018 grievance, on August 3, 2018, Mr. Cobbs submitted a grievance outlining how WIC had improperly withheld its response to his grievance.  (Cobbs Decl. ¶¶ 21-26.)  A true and correct copy of this August 2018 grievance as an exhibit to the Complaint.  (*Id*. at ¶ 22; Dkt. No. 3, at pp. 3-6.)

Plaintiff's AMF 24:  On or about August 16, 2018, Mr. Cobbs submitted his Complaint in this action to prison officials for filing with the court.  (Cobbs Decl. ¶ 27; Dkt. No. 1.)  At the time that he submitted his Complaint, Mr. Cobbs had never received any decision on his emergency grievance, and he did not believe he would receive any response.  (Cobbs Decl. ¶¶ 27-28.)

## ARGUMENT

### I.  Legal Standards.

#### A.  Motion for Summary Judgment.

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is only appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)); *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012)).  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).  As the Seventh Circuit has explained Rule 56(a) requires that the Court "set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor."  *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

#### B.  Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) ("*Pavey II*").  Exhaustion is an affirmative defense, which the defendants bear the burden of proving.  *Pavey II*, 663 F.3d at 903 (citations omitted).

For a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the Illinois Department of Corrections ("IDOC"), Mr. Cobbs was required to follow the grievance process outlined in the Illinois Administrative Code. Ill. Admin. Code, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id*. at § 504.810(a). If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id*. at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id*. If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id*. at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id*. at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 Ill. Admin. Code § 504.840 (2017). If the warden determines "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id*. On the other hand, if the warden determines the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*.

15

The Seventh Circuit has held that an inmate is required to exhaust only those administrative remedies that are available to him. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); 42 U.S.C. § 1997e(a). The PLRA does not define "availability" for purposes of the exhaustion requirement. However, the Seventh Circuit has held that the "availability of a remedy is not a matter or what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v Sutton*, 2009 WL 330531 at 13 (7th Cir. Feb. 11, 2009) (citing *Kaba v Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).

Administrative remedies may be effectively unavailable for many reasons. For example, remedies are unavailable if prison officials "erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey II*, 663 F.3d at 906. If a prisoner is told he must wait to file, and that wait makes his grievance untimely, the process in unavailable. *Brown v Croak*, 312 F.3d 109, 112 (3rd Cir. 2002). Prison officials who engage in affirmative misconduct, *Dole*, 438 F.3d at 809, or fail to respond to grievances, also render the grievance process unavailable to an inmate. *Lewis v Washington*, 300 F.3d 829, 833 (7th Cir. 2002). "In such cases, the prisoner is considered to have exhausted his administrative remedies." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *see also Turley v. Rednour*, 729 F.3d 645, 650 n. 3 (7th Cir. 2013) (collecting cases).

### C.     Evidentiary Hearing.

If issues of fact exist in determining whether an inmate has exhausted his administrative remedies, a judge should hold a hearing and resolve these factual disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) ("*Pavey I*"). The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *Pavey II*, 663 F.3d at 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case

will proceed to pretrial discovery, and if necessary a trial, on the merits." *Pavey I*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether: (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust; or (b) although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. *Id.* No evidentiary hearing is necessary, however, if there are "no disputed facts regarding exhaustion" and "only a legal question" is presented. *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

## II.     Mr. Cobbs Exhausted All Administrative Remedies That Were Available to Him.

Defendants argue that summary judgment in their favor is appropriate here because Mr. Cobbs did not appeal his December 18, 2017 emergency grievance to the ARB and receive a final response before filing suit. (Mot. for Summ. J., Dkt. No. 26, at 8.) This picture tells only half the story and Defendants have not met their burden.

The undisputed facts in this case show that Mr. Cobbs pursued all administrative remedies that were available to him, filing an emergency grievance to address the beating he suffered at the hands of Defendants, and following up on that emergency grievance repeatedly as it languished. (Pl.'s AMF Nos. 3, 8, 11-12, 23.) Mr. Cobbs never received any response to the emergency grievance despite waiting many months, no remedies were available to him from the grievance or appeals process, and he could not appeal to the ARB without the response that he never received anyway. (Pl.'s AMF Nos. 4, 15, 20-21, 24) Prison officials thwarted Mr. Cobbs attempts to follow procedures through failing to expediate the handling of his emergency grievance; failing to issue any decision on his emergency grievance within the two-month time frame set forth in the Code

(let alone the 30-day expectation for an emergency grievance as identified by Ms. Benton); providing poor, confusing, or otherwise incorrect instructions and information to Mr. Cobbs regarding the status of his emergency grievance; and by failing to provide him a written decision necessary for him to pursue his grievance to the ARB.  (Defs.' UMF No. 9; Pl.'s AMF Nos. 4-5, 7, 9-11, 15-16, 19-20, 24.)  *See also* Ill. Admin. Code tit. 20, § 504.830(e) (Grievance Officer shall consider grievance and issue report with findings and recommendations to warden within two months of receipt, when feasible); Ill. Admin. Code tit. 20, § 504.840(b) (emergency grievances shall be expedited).  Since administrative remedies were effectively available to Mr. Cobbs here, his remedies should be considered exhausted.  *Pyles*, 829 F.3d at 864 (administrative remedies are unavailable if prison employees do not respond to a properly filed grievance); *Turley*, 729 F.3d at 650 n. 3 ("[W]hen the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted his administrative remedies.").

### A.    Although Mr. Cobbs' Grievance Was Designated an Emergency, It Was Not Expedited.

Defendants assertion that Mr. Cobbs failed to follow the grievance procedures outlined in the Code is particularly ill-suited to this case, as the undisputed facts show that the prison officials here failed to follow those same procedures by letting Mr. Cobbs' emergency grievance languish unanswered and unaddressed for many months.  (Mot. for Summ. J. at 5-6.)  The emergency procedures require the warden to expedite the processing of a grievance that he or she determines shall be handled on an emergency basis, and the offender is to receive a response indicating what action shall or has been taken.  Ill. Admin. Code tit. 20, § 504.840(b).  Further, even for standard grievances, a Grievance Officer is to consider a grievance and provide a written report with findings and recommendations to the warden within two months of receipt, when feasible.  Ill. Admin. Code tit. 20, § 504.830(e).  These requirements cannot be found to be met here, when it is

18

not materially disputed that Mr. Cobbs' December 18, 2017 grievance was designated as an emergency by the warden, but the Grievance Officer Goins did not issue a response until May 25, 2018, and that response was never received.  (Defs.' UMF No. 9; Pl.'s AMF No. 3.)

Despite submitting a declaration in support of Defendants' Motion, Ms. Benton nevertheless agreed that the lengthy amount of time it took for a response to be prepared to Mr. Cobbs' emergency grievance was atypical.  She testified that typically, she would have expected a response within a month.  (Pl.'s AMF No. 7.)  In sharp contrast to this general expectation and the guidelines set forth in the Code, the response here took much more than one month—or two months, or even three months—to be prepared.

Further, Defendants argue that Mr. Cobbs "attempted to circumvent the grievance process" by submitting additional grievances when he never received any response to his December 18, 2017 emergency grievance.  (Mot. for Summ. J. at 7-8.)  This assertion violates the requirement that all reasonable inferences shall be drawn in favor of the non-movant Mr. Cobbs, not in favor of Defendants.  The materially undisputed facts here clearly show that the only reasonable interpretation of the facts here is that, having waited months, Mr. Cobbs submitted additional, duplicative grievances to officials at WIC and the ARB in an attempt to get some response—any response—to his long ago submitted emergency grievance.

After waiting about two months—the time period provided for in the Code for *non-emergency* grievances to be responded to, if feasible—without any response to his emergency grievance, Mr. Cobbs submitted another, essentially duplicate grievance about the December 15, 2017 assault, on February 15, 2018 to the officials at WIC and the ARB.  (Pl.'s AMF No. 8.)  Rather than receiving any update or information on his still-pending grievance, all Mr. Cobbs received was rejections.  (Pl.'s AMF Nos. 9-10.)  Where the undisputed record demonstrates that

the officials are using procedural technicalities to thwart an offender's ability to pursue administrative remedies, those remedies are not available.  *See Nelson Illinois Dep't of Corr.*, No. 17-1182, 2018 WL 2709308, at *3–4 (C.D. Ill. June 5, 2018) (where an offender sent a second copy of a grievance after not receiving a response, and the warden insisted on resubmission of the original grievance and incorrectly told the offender the grievance was untimely, defendants have not demonstrated a lack of exhaustion due to any fault of the offender).

More months passed without any response to Mr. Cobbs or any report being prepared by the Grievance Officer on his December 18, 2017 emergency grievance—until around the time Defendant Sheffler was allegedly involved in yet another assault on a handcuffed prisoner, Mr. Larry Earvin, in May 2018.  (Pl.'s AMF No. 12.)  Finally, over four months after Mr. Cobbs submitted his grievance, internal affairs suddenly provided a response to the Grievance Officer, Ms. Goins, in May 2018.  (Pl.'s AMF No. 13.)  That sparse response setting forth little more than that Defendants had denied Mr. Cobbs' allegations, and it is completely unclear why it took so many months for such little investigation to be conducted and this limited information to be provided by internal affairs on an assault that had occurred in the previous year.  (*See* Pl.'s AMF No. 14.)  Ms. Goins also apparently did not follow-up with internal affairs until this point, although she testified that she typically follows up with internal affairs within 30 to 45 days after making a submission, if she has not yet received a response.  (Pl.'s AMF No. 13.)

Nevertheless, the response from internal affairs finally prompted Ms. Goins to take action, interview Mr. Cobbs and prepare her written report on his emergency grievance—within eight days of the assault of Mr. Earvin—recommending that Mr. Cobbs' emergency grievance be found moot.  (Pl.'s AMF No. 15.)  The warden accepted and agreed with the recommendation on May 29, 2018.  (Pl.'s AMF No. 16.)  Of note, the Defendants provide no evidence with their summary

judgment papers that Mr. Cobbs actually received this response, despite the Defendants being on notice of this issue.

These belated responses fail to comply with the grievance procedure requirements for prison officials and serve no purpose regardless of their untimeliness when they are never received by Mr. Cobbs. That is what happened here, where Mr. Cobbs never had any knowledge of these decisions until the information was provided to him in discovery in this suit. (Pl.'s AMF No. 16.)

### B. Mr. Cobbs Never Received A Response to His Emergency Grievance.

If Mr. Cobbs did not receive any response to his grievance, he could not and was not required to appeal it to the ARB. *See Dole*, 438 F.3d at 809 (a remedy can be unavailable to prisoner if the prison does not respond to the grievance); *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (if an inmate submits a grievance but receives no ruling, he is not required to file an appeal); *Conway v. Godinez*, No. 15-3339, 2016 WL 6602599, at *4 (C.D. Ill. Nov. 8, 2016) (if a plaintiff submits a grievance but receives no response, he correctly argues that the grievance procedure was unavailable to him).

As discussed above, the necessary responses from the Grievance Officer and warden to Mr. Cobbs' emergency grievance did not begin to be prepared until Defendant Sheffler was allegedly involved in the assault of Mr. Earvin, which led to Mr. Earvin's death and for which Defendant Sheffler was eventually indicted. (Pl.'s AMF 12.) After internal affairs provides Ms. Goins with the Defendants' blanket denials of Mr. Cobbs' allegations, Ms. Goins finally prepares her May 25, 2018 report recommending to the warden that the grievance be deemed moot. (Pl.'s AMF No. 15.) As he apparently always does, the warden concurred with the recommendation on May 29, 2018. (Pl.'s AMF No. 16.) However, Mr. Cobbs never received these responses. (Pl.'s AMF Nos. 23-24.)

21

Although Ms. Goins declared in support of Defendants' Motion that she prepared her response and submitted it to the warden, and we see that the warden concurred, Ms. Goins does not know whether the response was actually mailed to Mr. Cobbs or whether he actually received the response.  (Pl.'s AMF No. 19.)  She could not recall if she mailed a response or if some clerical staff had done so although she believed it had been sent via institutional mail.  (*Id*.)

Other evidence in the record suggests that, even if some response was mailed to Mr. Cobbs via institutional mail (which Defendants have not presented proof of such mailing), it is not likely that it reached him.  Ms. Goins testified that a direction of "3A30" was written by some unknown person on the Grievance Officers Report and warden's response to Mr. Cobbs' emergency grievance so that it could be mailed to him.  (Pl.'s AMF No. 19.)  Even presuming that a copy of the response was sent to Mr. Cobbs on or about May 29, 2018, when the warden concurred that the grievance should be mooted, and that response was directed to Mr. Cobbs at his cell and wing "3A30," he was only housed at that living unit for a short time after May 29, 2018.  (Pl.'s AMF No. 2.)  Just a few days later, on or about June 8, 2018, Mr. Cobbs was moved to a receiving unit and was then again moved in a day or so to a new living unit.  (*See id*.)  Thus, the reasonable inferences from the undisputed material facts here are that Mr. Cobbs was in the process of being moved around in his living unit when—and if—any response was mailed to him, and by all accounts he did not receive any such response.  *See Singleton v. Tangman*, No. 13-CV-01301-MMM-JEH, 2014 WL 4668672, at *4 (C.D. Ill. Sept. 19, 2014) ("In this case, through mistake or inadvertence, prison officials failed to respond to Plaintiff's grievance thus making administrative remedies unavailable to him and excusing his failure to exhaust.").

Mr. Cobbs has been consistent in all of his actions that he was waiting for a response to his emergency grievance for months, checking up on that grievance repeatedly, and yet never received

the response or learned of it until he filed suit. (Pl.'s AMF No. 16.)   When a plaintiff "never received a response from the warden, he could not appeal to the ARB" and the plaintiff is "relieved" of his "need to appeal." *Brown v. Korte*, No. 15-CV-3288, 2016 WL 3556992, at *3 (C.D. Ill. June 24, 2016).   Even prior to filing suit, Mr. Cobbs filed yet another grievance, on August 3, 2018, complaining of being thwarted in his attempts to exhaust his administrative remedies and not having received any response to his December 18, 2018 grievance. (Pl.'s AMF Nos. 23-24.)   As confirmed by Ms. Benton, Mr. Cobbs was not provided an opportunity to exhaust his administrative remedies if he never received a response to this December 18, 2017 emergency grievance. (Pl.'s AMF No. 20.)   Thus, this Court should deem those remedies exhausted, as Mr. Cobbs exhausted those remedies which were available, and the undisputed material facts show that his inability to pursue his appeal to the ARB was through no fault of his own.

### C.   The Information and Instructions Mr. Cobbs Did Receive Was Incorrect or Confusing.

Defendants also cannot rely on an affirmative defense of the failure to exhaust administrative remedies where prison officials created the situation that caused the failure to exhaust. *Spraggins v. Baker*, No. 13-3213, 2015 WL 558293, at *3 (C.D. Ill. Feb. 10, 2015) (citing *Dole*, 438 F.3d at 811).   Although Defendants fault Mr. Cobbs for not waiting for his response from the warden and going through an appeal to the ARB before filing this lawsuit, (Mot. for Summ. J. at 7-8), Defendants fail to recognize the many acts by prison officials that prompted Mr. Cobbs to believe that he would never get any response. (Pl.'s AMF No. 24.)   This begins with the lengthy amount of time it takes any action on what was deemed an emergency grievance discussed above, and his failure to receive any response. *Supra* at Section II.A.-II.B, pages 18-23.

Communications that were sent to Mr. Cobbs also created confusion due to being unclear or incorrect.   For example, when Mr. Cobbs sent his December 18, 2017 emergency grievance to

the ARB, he received a response that it could not be submitted to the ARB without including information such as the response from the counselor.  (Pl.'s AMF No. 4.)  However, since the grievance was an emergency grievance, the procedure did not require such a response.  (*Id*.)  Also, when Mr. Cobbs followed-up on his unanswered grievance about two months later, in February 2018, both the Grievance Officer and ARB told him that his issue would not be addressed further, rather than being informed that his emergency grievance was still under submission.  (Pl.'s AMF Nos. 9-11.)

Ms. Goins by her own testimony had a copy of Mr. Cobbs' emergency grievance on her desk when he submitted his duplicate grievance to follow-up, but she made no effort to compare the grievances and provide information to Mr. Cobbs.  (Pl.'s AMF No. 10.)  This was true even though Ms. Goins recognized that inmates had followed-up on their grievances by sending duplicate grievances in her experience, and Ms. Benton's opinion was that Mr. Cobbs should have been informed that his emergency grievance was still pending and would receive a response even if he was also being advised that his duplicate grievance was improper.  (Pl.'s AMF No. 11.)

### D.     No Remedies Were Available to Mr. Cobbs.

Defendants also cannot rely on an affirmative defense of the failure to exhaust administrative remedies when "prison officials address an inmate's grievance on the merits," as the grievance has then "served its function of alerting the state and inviting corrective action[.]" *Spraggins v. Baker*, No. 13-3213, 2015 WL 558293, at *3 (C.D. Ill. Feb. 10, 2015).  Here, both Ms. Goins and Ms. Benton confirmed that Mr. Cobbs had no available remedies from the moment his emergency grievance was submitted, as the relief that he requested—transfer and criminal charges being brought against Defendants—was not within their authority or ability to grant.  (Pl.'s AMF No. 21.)  And since the prison officials had notice of Mr. Cobbs' allegations of Defendants'

assault of him and leaving him without medical care within mere days of the incident, since he submitted a grievance on December 18, 2017 regarding the December 15, 2017 assault, the officials had the ability to take corrective action right away.

No appeal of the grievance would provide any additional benefits to Mr. Cobbs or the prison officials in this case. Prison officials addressed Mr. Cobbs' grievance "on the merits" through the reference of the matter to internal affairs and the possibility of corrective action was then triggered. The undisputed material facts show that prison officials did not treat the allegations seriously anyway, regardless of it being designated as an emergency by the warden. Ms. Goins received unclear information from internal affairs regarding who was interviewed about the assault, as-expected denials of wrongdoing by Defendants were obtained, and Ms. Goins did not ask any questions. (Pl.'s AMF No. 14.) By all appearances, this "investigation" was perfunctory, and Ms. Benton testified that had she received the report, she may have taken some additional action to check whether Mr. Cobbs' claim was fully investigated. (Pl.'s AMF No. 17.)[6]

Moreover, the review process here appears to provide no more than illusory relief to someone like Mr. Cobbs who complained of excessive force by officers, as the Grievance Officer reviewing his claim, Ms. Goins, has never approved or upheld any part of such a grievance for relief, and the warden has never disagreed with her recommendation to moot or not approve any

---

[6] There is some suggestion in Ms. Benton's testimony that Defendant Sheffler might have faced some additional scrutiny if an ARB member, such as herself, found the grievances against him "notable." (Pl.'s AMF No. 18.) As stated above, *supra* note 5, Mr. Cobbs' counsel sought to inquire further into this issue, but Defendant Sheffler/Ms. Benton's counsel objected and instructed Ms. Benton not to respond to such questioning. *See id.* This testimony might have explained why administrative remedies were thwarted for Mr. Cobbs here. In any event, there is no undisputed evidence here to show that any relief or remedies would have been available to Mr. Cobbs even if he could have submitted an appeal to the ARB.

such grievance. (Pl.'s AMF No. 22.)  Given the foregoing, it cannot be said that any administrative remedies or relief was available to Mr. Cobbs.

### E.   No Evidentiary Hearing is Necessary Because There Are No Disputed Material Facts.

To the extent that Defendants assert that an evidentiary hearing is necessary in this case to resolve factual issues, the Court should deny such a request, as they have not—and cannot—present any evidence from which a trier of fact could determine that Mr. Cobbs failed to exhaust his remedies here.  Despite being presented with Mr. Cobbs' consistent statements in his Complaint and exhibits that he did not receive any response to his emergency grievance from the Grievance Officer, the warden, or anyone else at WIC, Defendants do not address this issue in their Motion.  Instead, they make a passing reference near the end of the Motion that Mr. Cobbs "did not wait to receive a response at the facility level" that he did not appeal before filing suit, wrongly assuming that he received a response within the time frame necessary to allow him to appeal. (Mot. for Summ. J. at 8.)

As shown in the undisputed facts and evidence here, Mr. Cobbs never received any such response, and was thwarted in presenting any appeal to the ARB prior to filing suit.  No additional facts or evidence could be presented here which could create an issue of fact, as all undisputed facts and evidence presented by the parties shows that Mr. Cobbs exhausted all available remedies. If Defendants seek to show that the Grievance Officer's report and warden's response was sent to Mr. Cobbs through an evidentiary hearing, it would be to no avail.  All the materially undisputed facts show that the person who may have mailed the document to Mr. Cobbs cannot be identified; Ms. Goins, Defendants' witness, has no personal knowledge of the document being mailed to or received by Mr. Cobbs; if a mailing was sent, it was sent to a location that Mr. Cobbs was moved from, into a different Living Unit, around the time that it may have been mailed; and Mr. Cobbs

has consistently and repeatedly shown that he did not receive a response, which he waited several months to receive and followed-up on several times, including by trying to present the facts of his claim to the ARB.  (*See* Defs.' UMF Nos. 5, 7, 12-16; Pl.'s AMF Nos. 2-4, 8, 9, 11, 12, 15, 16, 19, 20, 23, 24.)  Therefore, any request for an evidentiary hearing by Defendants should be denied, as there are no materially disputed issues of facts, and the legal question presented here should be determined in Mr. Cobbs' favor by the Court.

## CONCLUSION

For these reasons, this Court should deny Defendants' Motion for Summary Judgment for the Failure to Exhaust Administrative Remedies, strike Defendants' third Affirmative Defense, allow Mr. Cobbs' suit to proceed on the merits, and grant such other relief as the Court deems just and appropriate.

Dated:  October 8, 2020.　　　　　　　　Respectfully Submitted,

By:  */s/ Rachel F. Sifuentes*　　　　　
James P. Gaughan
Rachel F. Sifuentes
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone:  312.471.8655
Fax:  312.471.8701
jgaughan@rshc-law.com
rsifuentes@rshc-law.com

*Attorneys for Plaintiff Nathan Cobbs*

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)(4)</u>**

I certify that the foregoing document complies with the type-volume limitation of C.D. Ill. L.R. 7.1(B)(4)(b) and the page and type limitation of 7.1(D)(5) because the argument section contains 4,646 words according to the word count provided by Microsoft Word for Microsoft 365 MSO, and is set forth on 14 pages.

*/s/ Rachel F. Sifuentes*
Rachel F. Sifuentes

*An Attorney for Plaintiff Nathan Cobbs*