E-FILED
Thursday, 08 October, 2020  05:47:32 PM
Clerk, U.S. District Court, ILCD



# PohlmanUSA®

## Court Reporting and Litigation Services

---

Tara Goins

September 16, 2020

---

Nathan Cobbs vs. Cameron Watson, et al.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

NATHAN COBBS,                       )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 ) No. 18-3205-SLD
                                    )
CAMERON WATSON, et al.,             )
                                    )
        Defendants.                 )

VIDEO CONFERENCE DEPOSITION OF TARA GOINS

Taken on behalf of Plaintiff

September 16, 2020

Sherrie L. Merz, RDR, CCR, CSR

CSR No. 084-002840

CCR No. 995

1                    INDEX OF EXAMINATION

2                                                    PAGE

3   Examination by Ms. Sifuentes               4
    Examination by Ms. Patel                   107
4   Further Examination by Ms. Sifuentes       111

5

6                    INDEX OF EXHIBITS

7   Exhibit No. 1       Subpoena                    5
    Exhibit No. 2       Response to Grievance        36
8   Exhibit No. 3       Offender's Grievance         47
    Exhibit No. 4       Declaration                  50
9   Exhibit No. 5       IGRV Inmate History          55
    Exhibit No. 6       Response to Grievant         59
10  Exhibit No. 7       Offender's Grievance         76
    Exhibit No. 8       Cumulative Counseling Summary  82

11

12

13           (The original exhibits were marked by the
    court reporter and returned to Ms. Sifuentes.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF ILLINOIS
 2


 3

      NATHAN COBBS,                     )
 4                                      )
           Plaintiff,                   )
 5                                      )
      vs.                               )    No. 18-3205-SLD
 6                                      )
      CAMERON WATSON, et al.,           )
 7                                      )
           Defendants.                  )
 8


 9

                    VIDEO CONFERENCE DEPOSITION OF TARA GOINS,
10    produced, sworn, and examined on behalf of the
      Plaintiff, on September 16, 2020, between the hours of
11    9:03 a.m. and 12:44 p.m., by video conference, before
      Sherrie L. Merz, Registered Diplomate Reporter,
12    Certified Shorthand Reporter and Certified Court
      Reporter, and afterwards transcribed into print and that
13    signature by the witness is waived.

14
                        A P P E A R A N C E S
15

16                    ATTENDED BY VIDEO CONFERENCE:  The Plaintiff
      was represented by Rachel F. Sifuentes, Esq., and James
17    P. Gaughan, Esq., of the law firm of Riley Safer Holmes
      & Cancila, LLP, 70 West Madison Street, Three First
18    National Plaza, Suite 2900, Chicago, Illinois 60602.

19
                      ATTENDED BY VIDEO CONFERENCE:  The Defendants
20    were represented by Hinal Patel, Esq., of the Illinois
      Attorney General's Office, 500 South Second Street,
21    Springfield, Illinois 62704.

22

23

24

25
```

Examination by Ms. Sifuentes

 1            IT IS STIPULATED AND AGREED by and between

 2    counsel that the deposition of TARA GOINS may be taken

 3    by and on behalf of the Plaintiff, on September 16,

 4    2020, by video conference, before Sherrie L. Merz,

 5    Registered Diplomate Reporter, Certified Shorthand

 6    Reporter and Certified Court Reporter.

 7                        *   *   *   *   *

 8                       TARA GOINS,

 9    of lawful age, being produced, sworn, and examined on

10    the part of the Plaintiff, and after responding, "I do,"

11    to the oath administered by the court reporter, deposes

12    and says:

13                        *   *   *   *   *

14            (On the record at 9:03 a.m.)

15    EXAMINATION BY MS. SIFUENTES:

16        Q.   Miss Goins, state your name for the record --

17    there's some kind of feedback on your end.  Are you

18    hearing some kind of feedback, or is it your audio?

19            MS. PATEL:  No, I don't hear any feedback.

20    My volume in my laptop is kind of low, though.  Maybe

21    I'm missing it.

22            MS. SIFUENTES:  That could be me.  Just for a

23    second.  My apologies.

24            (Reporter clarifies.)

25        Q.   (By Ms. Sifuentes)  I think I'm clear on the

Examination by Ms. Sifuentes

1   audio now.  Everyone can hear me?  Miss Goins, am I

2   pronouncing that right, Goins?

3        **A.   Yes.**

4        Q.   Would you please state your name and spell it

5   for the record, your full name?

6        **A.   Tara Goins, T-A-R-A G-O-I-N-S.**

7        Q.   Thank you.  I'm going to be showing an

8   exhibit, and I'm going to represent to you that it's

9   going to be a subpoena that was sent to you.  Part of

10  this is just to make sure that the exhibit process is

11  working properly, if you'll bear with me a moment.  All

12  right.  I'm showing you a screen with a document.  Are

13  you able to see this, Miss Goins?

14       **A.   Yes.**

15       Q.   And Ms. Patel, are you able to see as well?

16            MS. PATEL:  Yes.

17       Q.   (By Ms. Sifuentes)  All right.  Ms. Merz, can

18  we mark this document as Exhibit 1?  The title is

19  Subpoena to Testify at a Deposition in a Civil Action.

20            (Exhibit No. 1, Subpoena, was marked for

21  identification.)

22       Q.   (By Ms. Sifuentes)  And, Miss Goins, are you

23  able to see a little hand-shaped pointer that I'm moving

24  on the screen?

25       **A.   Yes.**

Examination by Ms. Sifuentes

1      Q.   Do you have somebody you reported to as a
2  grievance officer?
3      **A.   Generally, if I had any issues with**
4  **grievances, I would bring them up with the assistant**
5  **warden of programs or the warden.**
6      Q.   In your role as the grievance officer, did
7  you make reports and recommendations based on the
8  grievances that you reviewed?
9      **A.   Yes.**
10     Q.   And would you send those reports and
11 recommendations to the assistant warden of programs?
12     **A.   Well, that just depends who the warden is at**
13 **the time.  Sometimes the warden has to sign off on them.**
14 **Sometimes the assistant warden of programs has to sign**
15 **off on them.**
16     Q.   Did you have any support staff that assists
17 you with handling grievances?
18     **A.   Yes.**
19     Q.   Who is that support staff?
20     **A.   We had clerical in the clinical services**
21 **department, and our clerical would be the ones to**
22 **photocopy the completed grievances and send them to the**
23 **inmates.**
24     Q.   About how many clinical services, clerical
25 assistants helped you?

Examination by Ms. Sifuentes

1        A.    It varies.  People come and go.  They don't

2    fill positions.

3        Q.    Did you have anyone else who provided you

4    support for handling grievances?

5        A.    As far as what?

6        Q.    For example, to help you investigate

7    grievance circumstances.

8        A.    Depending on what the grievance was about, I

9    would -- that is where I would send the grievance to.

10       Q.    So you would classify a grievance and send it

11   to departments for handling?

12       A.    Correct.

13       Q.    What are the different places that you could

14   send a grievance?

15       A.    We could send it to the staff that's

16   involved.  We can send it to internal affairs.  You can

17   send it to intel, health care, vocational, the chaplain,

18   dietary, just whatever the point is on.

19       Q.    When would you send a grievance to internal

20   affairs?

21       A.    Generally, I would send it to internal

22   affairs if it was like an emergency by the warden and it

23   had to do with staff conduct.

24       Q.    I think you said one of the places you would

25   send a grievance is intel?

Examination by Ms. Sifuentes

1      **A.    Yeah.   That's like the intelligence unit for**
2  **like gangs and stuff, STG.**
3      Q.    What is STG?
4      **A.    Security threat group.**
5      Q.    Let's take a step back and ask you more about
6  the process of handling the grievances.  How did you
7  receive grievances?
8      **A.    I would either -- on every wing, there's**
9  **what's called a locked box that has grievances in it.**
10  **Inmates can place grievances in those locked boxes.**
11  **They could send them to the warden, or they could send**
12  **them directly to me.**
13      Q.   And you say you collected grievances every
14  day?
15      **A.    Back then, it was probably collected once a**
16  **week.**
17      Q.   By back then, do you mean when the events at
18  issue in this case occurred, in 2017, 2018?
19      **A.    Yes.   The process changed in December of**
20  **2018.**
21      Q.    Okay.  So prior to December 2018, you would
22  collect grievances about once a week?
23      **A.    Correct.**
24      Q.   And you mean collect them from the locked box
25  on the wing?

Examination by Ms. Sifuentes

1   box for the grievance to be treated as an emergency?

2       **A.   Yes.**

3       Q.   And he has signed his name, put in his inmate

4   ID number and dated the grievance?

5       **A.   It appears, yes.**

6       Q.   He's also marked the nature of the grievance

7   as staff conduct?

8       **A.   Yes.**

9       Q.   And he has written a description out of

10  events under the summary of grievance?

11      **A.   Yes.**

12      Q.   Does this grievance meet the criteria that is

13  necessary for the grievance to be submitted to the

14  warden?

15      **A.   Yes.  That would have went to the warden**

16  **first.**

17      Q.   Did you send this grievance to the warden?

18      **A.   Yes.**

19      Q.   This section of the grievance that's titled

20  emergency review, is this the section that the warden

21  fills out?

22      **A.   Yes.**

23      Q.   And the warden has dated the grievance

24  received January 18th, 2018?

25      **A.   Yes.**

Examination by Ms. Sifuentes

1      Q.   And the warden has indicated yes, expedite
2  emergency grievance?
3      **A.   Yes.**
4      Q.   This indicates the warden determined
5  Mr. Cobbs' grievance to be of an emergency nature?
6      **A.   Yes.**
7      Q.   And the warden signed his name and dated the
8  grievance?
9      **A.   Correct.**
10     Q.   And then he would have returned this
11  grievance to you?
12     **A.   Yes.**
13     Q.   And then what did you do with this grievance
14  after it was returned to you?
15     **A.   I would have made a copy of it and sent it to**
16  **internal affairs.**
17     Q.   And why would you have sent it to internal
18  affairs?
19     **A.   Because it was marked emergency.**
20     Q.   What was the nature of Mr. Cobbs' grievance?
21  What was he grieving?
22     **A.   I can't read it.  Staff conduct is what he**
23  **marked.**
24     Q.   Uh-huh.
25     **A.   So since he marked that comment and it was**

Examination by Ms. Sifuentes

1  marked an emergency, I would send it to internal

2  affairs.

3      Q.   And by sending it to internal affairs, how do

4  you send it to internal affairs?

5      A.   I made a copy of it and I put it in the

6  institutional mail to go to internal affairs.

7      Q.   And do you know what happened to the

8  grievance after you sent it to internal affairs?

9      A.   Which grievance, the copy or the original?

10     Q.   The copied one that you sent to internal

11 affairs.

12     A.   I'm guessing internal affairs received it

13 because they answered it.

14     Q.   Okay.  And what did you do with the original

15 grievance?

16     A.   I held on to it until I got the response back

17 from internal affairs.

18     Q.   Okay.  So when you received the grievance

19 returned from the warden indicating it was an emergency,

20 you sent a copy to internal affairs, and you retained

21 the original while you waited for a response from

22 internal affairs; is that correct?

23     A.   Correct.  Correct.

24     Q.   When did you -- sorry.  I'm going to stop

25 sharing this so it's not distracting.  Okay.  When did

Examination by Ms. Sifuentes

1  you receive a response from internal affairs on

2  Mr. Cobbs' grievance?

3      **A.  I don't know.  It would have been around the**

4  **date that I responded to it.**

5      Q.  Do you keep a log or some way to track the

6  responses that you're waiting for from internal affairs?

7      **A.  Yeah.  I keep the emergencies separate from**

8  **the regular answered grievances.**

9      Q.  What do you mean by you keep the emergencies

10 separate?

11     **A.  When I get the grievances, I have the**

12 **grievances that have been signed off by the counselor,**

13 **that they go with discipline in a pile, and then I paper**

14 **clip all my emergencies that I'm waiting for responses**

15 **separate from the normal grievances.**

16     Q.  So the original emergency grievances that you

17 keep, that's how you know the ones that you're waiting

18 for a response from which are --

19     **A.  I know -- yes.  I know by that, and I would**

20 **know by my grievance log.**

21     Q.  And do you follow up with the department if

22 you haven't received a response within a certain time?

23     **A.  Yes.**

24     Q.  When would you follow up with the department?

25     **A.  There's no set time frame.**

Examination by Ms. Sifuentes

1      Q.   Under what circumstances would you follow up?

2      **A.   After it's been 30 days or so, 45 days, I'll**

3   **give them a courtesy hi, I still haven't received in**

4   **response yet.**

5      Q.   Do you send an e-mail or how do you give --

6      **A.   I'll either call them or send an e-mail.**

7      Q.   Did you follow up on a response of internal

8   affairs for Mr. Cobbs' grievance?

9      **A.   I don't recall.**

10      Q.   If you checked your e-mail, would you have a

11   record of following up by e-mail?

12      **A.   Probably.  I don't know if I called them or**

13   **sent them an e-mail.  Generally with internal affairs, I**

14   **call them because they're so busy.**

15      Q.   Are there any call logs or call records of

16   these follow-up calls?

17      **A.   No.**

18      Q.   Would you make any notations on the grievance

19   log regarding following up on a grievance?

20      **A.   No.**

21      Q.   Would you make any notes for yourself that

22   you have followed up, personal notes?

23      **A.   Just depends on how long it's been.**

24   **Sometimes I'll write a sticky note and put it on the**

25   **grievance the day I called.**

Examination by Ms. Sifuentes

1      Q.   And do you retain those notes?

2      **A.   No.**

3      Q.   So with respect to Mr. Cobbs' grievance dated

4 December 15th, 2017, you have no record related to any

5 follow-up for that grievance?

6      **A.   No.**

7      Q.   And you have no recollection whether you

8 followed up or not with regard --

9      **A.   If I would have made multiple calls, I would**

10 **have put it in the grievance itself.**

11      Q.   What do you mean by you would have put it in

12 the grievance itself?

13      **A.   I would have made a notation in my response**

14 **that I attempted to get a response on these dates.**

15 **There are times when staff just won't answer a**

16 **grievance.  And so I will note that if I have to keep**

17 **hounding for a response.**

18      Q.   I'm going to share an exhibit with you.  It's

19 the same exhibit we were looking at before, Exhibit 2.

20 It's another page from that exhibit.  Can you see the

21 document on the screen?

22      **A.   Yes.**

23      Q.   This was the page we were looking at

24 previously, correct, the offender's grievance with the

25 date December 15th, 2017, in the corner?

Examination by Ms. Sifuentes

1      **A.    Yes.**

2      Q.    I'll so you -- I'm scrolling up to the

3   previous page in that same document, and it's titled

4   Grievance Officer's Report.  Can you see this?

5      **A.    Yes.**

6      Q.    And the date received, January 19, 2018?

7      **A.    Correct.**

8      Q.    And date of review May 25th, 2018?

9      **A.    Correct.**

10      Q.    And it has your name Tara Goins?

11      **A.    Yes.**

12      Q.    And your signature?

13      **A.    Correct.**

14      Q.    So this is your grievance report with respect

15   to Mr. Cobbs' grievance dated December 15th, 2017,

16   correct?

17      **A.    Correct.**

18      Q.    Where in the record would you have recorded

19   follow-ups with internal affairs?

20      **A.    I would have put it before their response.**

21   **It would have been the first paragraph after the first**

22   **paragraph right before Lieutenant Durell's response.**

23   **That's where I would have put it.**

24      Q.    So this grievance, the second paragraph says

25   Lieutenant Durell, internal affairs, response states

Examination by Ms. Sifuentes

1   that all staff involved interviewed.  This is the

2   response you received from the internal affairs section?

3       **A.    Correct.**

4       Q.    And so if you had followed up, you would have

5   put it before that paragraph?

6       **A.    Yes.  If I would have had followed up**

7   **multiple times, I would have put it before that**

8   **paragraph.**

9       Q.    Okay.  And that's not in this report,

10  correct?

11      **A.    Correct.**

12      Q.    By that, I mean you didn't put in this report

13  that you had to follow up with internal affairs to

14  receive a response?

15      **A.    Right.  I didn't have to follow up numerous**

16  **times to get a response from internal affairs.**

17      Q.    Okay.  I'm going to stop sharing this

18  exhibit.  I'm going to show you a different exhibit so

19  bear with me a minute.  See the document on the screen?

20      **A.    Excuse me?**

21      Q.    Can you see the document?

22      **A.    Yes.**

23      Q.    Is my speaker okay?  Can you hear me?

24      **A.    There was just some feedback going on.**

25      Q.    Oh, sure.  Ms. Merz, can we mark this as

Examination by Ms. Sifuentes

1    Exhibit No. 3, Offender's Grievance with a date 12/18/17

2    in the corner?

3               (Exhibit No. 3, Offender's Grievance, was

4    marked for identification.)

5         Q.   (By Ms. Sifuentes)  Miss Goins, you can read

6    the date here?  It says 12/18/17.

7         **A.   Correct.**

8         Q.   And can you read the offender's name?

9         **A.   Yes.**

10        Q.   Does it say Nathan Cobbs?

11        **A.   Yes.**

12        Q.   And a little bit in the middle of the form,

13   there's another date.  Can you read this date?

14        **A.   Not clearly, no.**

15        Q.   Yeah, it's a bit -- does this look like it

16   says 02/15?

17        **A.   Yeah.  It looks like it says 02/15.**

18        Q.   This one is a bit difficult to read.

19        **A.   Yes.**

20        Q.   Yeah, for me too.  February 15, we can read

21   that, that it's dated February 15?

22        **A.   Yes.**

23        Q.   And right here we have a stamp that says

24   received April 3rd, 2018?

25        **A.   Yes.**

Examination by Ms. Sifuentes

1          A.    What was the question again?

2          Q.    Did Mr. Cobbs submit this grievance two

3     months after the December 15th, 2017, assault being

4     grieved?

5          A.    So it looks like the end date of February

6     15th, and ARB received it on April 4th.

7          Q.    Uh-huh.

8          A.    So roughly, not quite two months.

9          Q.    Not quite two months.  But he sent this

10    grievance about two months, about two months after the

11    incident that he's complaining about?

12         A.    That he wrote it or that he sent it?

13         Q.    That he submitted it to you, the grievance

14    officer.

15         A.    Well, I can't read my date stamp, so I don't

16    know how long it was after he signed off on it that I

17    received it.

18         Q.    You're saying you know it was submitted to

19    the administrative review board in April 2018?

20         A.    Correct.  Correct.

21         Q.    But you have no idea when you received it?

22         A.    Well, I can't read the date stamp.  But I

23    would have sent a cover letter with it with the date on

24    there that I received it.

25         Q.    Oh, you would have sent a cover letter back

Examination by Ms. Sifuentes

1    to the inmate.  Is that what you're saying?

2         **A.    Yes.  Yes.**

3         Q.    Let me see if I can show you that.  Just a

4    moment.  Okay.

5         **A.    Yes.**

6         Q.    Can you see this document?

7         **A.    Yes.**

8         Q.    And Ms. Merz, can we mark this Exhibit 6,

9    titled Illinois Department of Corrections?

10             (Exhibit No. 6, Response to Grievant, was

11   marked for identification.)

12        Q.    (By Ms. Sifuentes)  Miss Goins, is this the

13   cover letter you're referring to concerning the

14   grievance that he dated February 15th?

15        **A.    Correct.**

16        Q.    And you dated this cover letter March 7th,

17   2018?

18        **A.    Correct.**

19        Q.    Would you have sent this shortly after

20   receiving Mr. Cobbs' grievance?

21        **A.    It says on there the date received was 3/1 of**

22   **18.**

23        Q.    So you received his grievance on March 1st,

24   2018?

25        **A.    Correct.**

Examination by Ms. Sifuentes

1    Q.   Okay.  So Mr. Cobbs dated his grievance
2  February 15th and you received it March 1st, 2018, a
3  couple weeks later?
4    **A.   Correct.**
5    Q.   So at the time that you wrote this cover
6  letter, you still had in your possession the previous
7  emergency grievance dated December 15, 2017; is that
8  correct?
9    **A.   Correct.**
10   Q.   So you could have compared the grievance that
11 you received on March 1st to Mr. Cobbs' previous
12 grievance?
13   **A.   When I review the grievances, I don't go and**
14 **look to see the time frame if I've already received one**
15 **or not.  I received that grievance.  It was out of time**
16 **frame.  I sent it back to him letting him know that.**
17   Q.   So you didn't look to see if there was
18 another grievance pending?
19   **A.   No.**
20   Q.   But you could have?
21   **A.   I could have, yes.**
22   Q.   Okay.  So you checked this line indicating
23 that the grievance is not submitted in the time frame in
24 Department Rule 504.  Therefore, the issue will not be
25 addressed further.

Examination by Ms. Sifuentes

1    **A.    Correct.**

2    Q.   And you wrote in 60-day time frame?

3    **A.    Correct.**

4    Q.   Why did you write in 60-day time frame?

5    **A.    Because an inmate has 60 days to file a**

6    **grievance from the date of the incident.  And if he's**

7    **saying the incident happened on December 15th, I do**

8    **believe the 3/1 is past the 60-day time frame.**

9    Q.   And what does this part mean, therefore, the

10   issues will not be addressed further?

11   **A.    That issue with that grievance right there**

12   **will not be addressed.  That grievance will not be**

13   **addressed further, that specific one.**

14   Q.   If the issue in this grievance is the same

15   issue from a previous grievance, could a reasonable

16   person assume that issue will not be addressed further

17   refers to the same issue?

18           MS. PATEL:  Object to the form of the

19   question.  Go ahead, Miss Goins.  You can answer the

20   question if Rachel is finished asking it.

21   **A.    Can you repeat the question?**

22   Q.   (By Ms. Sifuentes)  Sure.  No problem.  You

23   know, I'm going to ask a different question.  The issue

24   in Mr. Cobbs' February 15th grievance is the same issue

25   that was in his December 15th grievance; is that

Examination by Ms. Sifuentes

1  correct?

2       **A.    Yes.**

3       Q.    Both grievances concerned an alleged

4  assaulted by three of six officers?

5       **A.    Correct.**

6       Q.    And this form tells Mr. Cobbs that the issue

7  in this specific grievance with not be addressed

8  further?

9       **A.    That grievance will not be addressed further.**

10      Q.    And that grievance referring to the February

11  15th grievance?

12      **A.    Correct.**

13      Q.    Could a reasonable inmate assume that issue

14  will not be addressed further means the assault?

15            MS. PATEL:  Objection.  Form of the question,

16  Miss Goins, you can answer if you know the answer.

17      **A.    Well, I would assume that the inmate would**

18  **know that he had previously written a grievance within**

19  **the time frame and that this was a second grievance**

20  **which a duplicate grievance would not be addressed.  And**

21  **it's out of time frame to be addressed.**

22      Q.    (By Ms. Sifuentes)  And what would you base

23  that assumption on?

24      **A.    That he wrote a first grievance.  And if he**

25  **was to write me a request list asking about the**

Examination by Ms. Sifuentes

Page 63

1    grievance, his first grievance dated in December, I

2    would have sent him a memo back stating I am in receipt

3    of your grievance, would have given him the grievance

4    number and would inform him when it's been responded to,

5    he will receive a copy.

6        Q.   What is a request list -- is that what you

7    said?

8        A.   Yeah.  They can write request lists asking

9    for generalized questions and issues.

10       Q.   And they can write on the request list that

11   they are following up on a grievance?

12       A.   Correct.  They can also ask their counselor

13   too.

14       Q.   You mean the inmate can ask the correctional

15   counselor what the status is of their grievance?

16       A.   Yeah.  And generally the counselor will

17   either e-mail me or call me and ask me what the status

18   of the said grievance is.

19       Q.   Uh-huh.  Do you know who Mr. Cobbs' counselor

20   was at this time?

21       A.   No, I don't.

22       Q.   Okay.  Getting back to the request list, is

23   there a form for that request list?

24       A.   Yeah, it's a request list.  It's like a

25   rectangle piece of paper, and it's just information he

Examination by Ms. Sifuentes

1    fills out and what he requests.  So he can put I

2    submitted a grievance in December of 2017.  I was

3    inquiring the status of that grievance.

4            And I would respond back to him I received

5    said grievance on whatever date I received it.  When it

6    is completed, you will receive a copy of it.

7        Q.   Okay.  One of the ways an inmate can follow

8    up on a grievance is the request list?

9        A.   Correct.

10       Q.   Another way an inmate can follow up on a

11   grievance is asking their correctional counselor?

12       A.   Correct.

13       Q.   Do inmates also follow up on their grievances

14   by filing duplicate grievances?

15       A.   Yes.

16       Q.   Is that a proper way to follow up on a

17   grievance?

18       A.   No.

19       Q.   But do you have the experience inmates

20   following up on their grievances improperly by

21   submitting duplicate grievances?

22       A.   Yes, they do duplicates.  They send requests.

23   They have counselors call.  They do all of them.

24       Q.   So they follow up in a variety of ways?

25       A.   Yes.

Examination by Ms. Sifuentes

1    Q.   Did you understand Mr. Cobbs to be following
2  up on his grievance when he submitted this grievance?
3    **A.   No, I felt that he was submitting a whole new**
4  **grievance.**
5    Q.   Why did you think he was writing a new
6  grievance?
7    **A.   Because he put on there on the date of, I**
8  **think, December 15th.**
9    Q.   I'm going to stop showing this document and
10  go back to the December 15th so you can see it.  And
11  that's the December 15th grievance; is that correct?
12  Can you see that?
13    **A.   December 18th?**
14    Q.   I'm sorry, I meant February 15th.
15    **A.   Correct.**
16    Q.   That's my fault.  I apologize for that.  This
17  is the February 15th grievance, Exhibit 3, and you said
18  you thought this was a new grievance?
19    **A.   Yes, that he was filing a new grievance on**
20  **this issue.**
21    Q.   A new grievance on the same issue as his
22  previous grievance?
23    **A.   Well, I didn't know at that time that he had**
24  **a previous grievance in.  That's because I don't**
25  **double-check that.**

Examination by Ms. Sifuentes

1    Q.   I see.  You thought this was a new grievance

2  about a December 15th, 2017, assault?

3    **A.   Correct.**

4    Q.   Okay.  I'm just checking the time.  It's been

5  about two hours.  Would you like to take a break, or are

6  you okay with continuing?

7    **A.   I'm fine.  I'm good.**

8    Q.   Okay.  I'm going to stop sharing this

9  document and go back to a previous exhibit.  This is

10  Exhibit 1 [sic] which we were looking at before.  It is

11  your report you dated January 19, 2018, date of review

12  May 25th, 2018.  Do you see this document?

13    **A.   Yes.**

14    Q.   So this report was on Mr. Cobbs' first

15  grievance?

16    **A.   Correct.**

17    Q.   Okay.  And that grievance was the next page

18  of this same document, so that was the grievance he

19  dated December 15th 2017?

20    **A.   Correct.**

21    Q.   I'm sorry.  I mean, the events were allegedly

22  on December 15th, 2017?

23    **A.   Yeah.  That's the grievance that's hard to**

24  **read, but the date at top he has December 15th.**

25    Q.   Right.  And he dated it down here

Examination by Ms. Sifuentes

1    December 18th?

2         A.    Yeah.  That's hard to read also still.

3         Q.    Yeah.

4         A.    Yeah.

5         Q.    This is the grievance that the warden

6    designated an emergency on January 18, 2018?

7         A.    Correct.

8         Q.    Okay.  And you responded to this grievance

9    with the grievance officer's report, date of review May

10   25th, 2018?

11        A.    Correct.

12        Q.    And we have here date received January 19,

13   2018?

14        A.    Yeah.  It looks like it.  Yes.

15        Q.    What does this date received refer to?

16        A.    That's the date I got it back from the

17   warden's office.

18        Q.    All right.  So the time between the date you

19   got it back from the warden's office and the date of

20   review, how long is that?

21        A.    Almost a little over four months.

22        Q.    Uh-huh.  And do you know why it took four

23   months to respond to the emergency grievance of

24   Mr. Cobbs?

25        A.    As I stated earlier, I sent it to internal

Examination by Ms. Sifuentes

1  **affairs, and I was waiting for them to get me an answer**

2  **back.**

3      Q.    Uh-huh.  An emergency grievance, is that

4  supposed to be an expedited review of the grievance?

5      **A.    It says expedited, but there is no time**

6  **frame.**

7      Q.    Would you consider four months to be

8  expedited review of the grievance?

9          MS. PATEL:  Objection.  Form of the question.

10  You can answer.

11     **A.    If that's how long it took for internal**

12  **affairs to investigate the incident.**

13     Q.    (By Ms. Sifuentes)  What did internal affairs

14  do to investigate the incident?

15     **A.    I'm not privy to that information.**

16     Q.    Did they provide you a response?

17     **A.    The response that I provided is the response**

18  **that they gave me.**

19     Q.    Okay.  Is that this second page of the

20  grievance that begins Lieutenant Durell, internal

21  affairs?

22     **A.    Correct.**

23     Q.    So this paragraph is the response that was

24  given to you by internal affairs?

25     **A.    Correct.**

Examination by Ms. Sifuentes

1    Q.   And so what is the response that was given to
2  you?

3    **A.   You want me to read it?**

4    Q.   Sure, if you can read it.  Are you able to
5  see?

6    **A.   Yeah.  Lieutenant Durell, internal affairs,**
7  **response states that all staff involved interviewed.**
8  **All allegations were denied.  Offender Cobbs refused**
9  **medical treatment for self-inflicted wounds.  Cobbs was**
10 **placed in IS and was upset over allegations of pending**
11 **charges.  Allegations are unsubstantiated.**

12   Q.   Okay.  And then what does the next paragraph
13 say?

14   **A.   Inmate Cobbs interviewed by this grievance**
15 **officer, states he does not have anything more to state**
16 **about this incident, that nothing has happened since.**

17   Q.   And so you wrote this section regarding
18 interviewing Mr. Cobbs; is that correct?

19   **A.   Correct.**

20   Q.   When did you next see Mr. Cobbs?

21   **A.   After internal affairs was done with their**
22 **investigation.**

23   Q.   So it was after you received the response
24 from internal affairs when you interviewed Mr. Cobbs
25 yourself?

Examination by Ms. Sifuentes

1        A.    Correct.

2        Q.    Why did you take that step, interview

3   Mr. Cobbs, I mean?

4        A.    It's an administrative directive that I must

5   interview him.

6        Q.    And why did you wait until after you had a

7   response from internal affairs?

8        A.    That way I knew the investigation was

9   completed by internal affairs.

10       Q.    What date did you interview Mr. Cobbs?

11       A.    I don't have a date on there.  I don't know.

12       Q.    What did you say to Mr. Cobbs?

13       A.    I don't know specifically what I said to him.

14   But I would have said something like I have your

15   grievance concerning staff conduct with the staff

16   involved.  Do you have anything further to say?  Has

17   anything happened to you since then concerning the staff

18   members?

19       Q.    Would you have told him about -- I'll start

20   over.  Did you tell Mr. Cobbs what internal affairs told

21   you regarding their investigation?

22       A.    No.  That would be on the grievance response

23   that he would get back.

24       Q.    Would you have told him whether his grievance

25   would be granted or denied?

Examination by Ms. Sifuentes

1          **A.    No.  All I told him was that I am in receipt**

2   **of his grievance concerning staff conduct with the staff**

3   **involved and asked him if he has anything further to say**

4   **or if anything has happened to him since concerning the**

5   **staff members.**

6          Q.    Would you have told him whether or not he was

7   going to receive a response?

8          **A.    Yes, if I get the response typed up, he will**

9   **get a copy back.**

10         Q.    You would told him that once you get the

11  response typed up, he will get a copy back?

12         **A.    That he would get a copy in the mail, yes.**

13         Q.    Okay.  And at the bottom of the document,

14  there's a recommendation section.  Is this your

15  recommendation concerning the grievance?

16         **A.    It is based on my recommendation concerning**

17  **his relief requested.**

18         Q.    Sorry, did you say his release or his relief?

19         **A.    Relief requested.**

20         Q.    Okay.  This would have been a recommendation

21  on the relief that Mr. Cobbs requested in his grievance?

22         **A.    Correct.**

23         Q.    And what was your recommendation in regards

24  to that request?

25         **A.    Well, he requested to file criminal charges**

Examination by Ms. Sifuentes

1    on staff and to be transferred.  Both of those are out

2    of my jurisdiction, so I considered his grievance to be

3    moot, which means there's nothing more I can do with it.

4         Q.   Okay.  And do you have to speak to the

5    officers involved about the grievance?

6         A.   No.  That one would have went to internal

7    affairs, and they would have handled the investigation.

8         Q.   And the response you receive from internal

9    affairs, is that a written response?

10        A.   Yes.

11        Q.   And do you ask questions about the response?

12        A.   No.

13        Q.   Okay.  When you completed your report on May

14   25th, 2018, what did you do with it?

15        A.   Once I completed my portion, then I sent it

16   down to either -- in this case, the warden's office for

17   the warden to make his determination.

18        Q.   Okay.  And how do you send it to the warden's

19   office?

20        A.   I take it to his office personally.

21        Q.   Okay.  And what happens once you've given

22   your report to the warden?

23        A.   He makes his recommendation, signs his name,

24   dates it, and then his office brings that grievance back

25   to me to process.

Examination by Ms. Sifuentes

1    Q.   Okay.  I'm going to share the same exhibit

2  with you again.  This report that says chief

3  administrative officer's response, is that the response

4  to your report?

5       **A.   Correct.**

6    Q.   And it's dated May 25th, 2018?

7       **A.   Correct.**

8    Q.   And he has checked the box I concur?

9       **A.   Correct.**

10   Q.   So he agreed with your recommendation?

11      **A.   Correct.**

12   Q.   And then he signed and dated the response?

13      **A.   Correct.**

14   Q.   So you would have received this response from

15 the warden?

16      **A.   Correct.**

17   Q.   And I think I missed, how would he get that

18 response to you?

19      **A.   Generally, either his secretary would walk**

20 **them down to my office, or if I happened to be in his**

21 **office, they would hand them to me.**

22   Q.   Okay.  And do you remember receiving this

23 response, this specific response regarding Mr. Cobbs'

24 grievance from the warden?

25      **A.   I'd have to look at my grievance log.  If the**

Examination by Ms. Sifuentes

1    grievance log was completed then yes, I would have

2    received it.

3          Q.    So once you received a response, you log it

4    on your grievance log?

5          A.    Correct.

6          Q.    And then what do you do with it after you log

7    it on your grievance log?

8          A.    I have clerical that would make the copies

9    and send a copy to the inmate, and the original would go

10   in his master file.

11         Q.    So you would have given it to a clerical

12   staff to make copies and file them?

13         A.    Correct.

14         Q.    And would the clerical staff have also sent

15   the response to Mr. Cobbs?

16         A.    Yes.  They'd be the ones that send the copy

17   to him.

18         Q.    And how do they give it to him?

19         A.    Through institutional mail.

20         Q.    Okay.  So you did not mail this response to

21   Mr. Cobbs?

22         A.    I would only mail them if we didn't have any

23   clerical there for the day.  We had one clerical.  If

24   that person was gone, then I would have.  It would

25   either be me or clerical.

Examination by Ms. Sifuentes

1        Q.   So this specific response to Mr. Cobbs, the

2   May 2018, do you remember if it was you or clerical?

3        **A.   If you scroll up to the top of that page**

4   **right there, this is what looks like it's 3/8 something.**

5        Q.   Yes.  This is what you need to see

6   (indicating)?

7        **A.   Yeah, right there.**

8        Q.   Uh-huh.  I see what looks like maybe 3 30 --

9        **A.   Yeah, with all the writing in there, I don't**

10   **know if that's my writing or if that is clerical's**

11   **handwriting.**

12        Q.   I see.  So what you're saying --

13        **A.   At the time he would have lived in it looks**

14   **like at 3A30 and they would have folded that grievance**

15   **up to where 3A30 and his name was showing and put it in**

16   **an institutional mailbox to him.**

17        Q.   So this response has a notation of the cell

18   and wing he would have been housed at.  Is that what you

19   mean here?

20        **A.   Yes.  He was residing in 3A30.**

21             **(Reporter clarifies.)**

22        Q.   I said this response to Mr. Cobbs' grievance

23   contains a notation of 3A30, which is the cell and wing

24   that he was housed at.  Miss Goins, you can answer that

25   question.

Examination by Ms. Sifuentes

1          **A.    Yes, he resided in 3A30 at the time that**
2     **grievance was sent back.**
3          Q.    So the person that sent the response to him
4     wrote his location information on the grievance?
5          **A.    Correct.**
6          Q.    And you can't tell if this person was you or
7     someone else?
8          **A.    Not with all the other lettering on there, I**
9     **can't tell.**
10         Q.    You can't read the handwriting?
11         **A.    No.**
12         Q.    And you don't remember if it was you or
13    someone else?
14         **A.    No, I don't.**
15         Q.    Okay.  I'm going to show you a different
16    document.  Bear with me for a second.  Actually, before
17    I do this, are you okay with continuing, or do you need
18    a break?
19         **A.    No, I'm fine.**
20         Q.    Okay.  And it's kind of getting close to
21    lunch, so we can talk about that in a minute.  I'm
22    showing you a document on the screen.  It's Offender's
23    Grievance is the title.  And, Ms. Merz, I think we're on
24    Exhibit 7 if we could so mark it.
25              (Exhibit No. 7, Offender's Grievance, was

Examination by Ms. Sifuentes

1    officer's stamp?

2         A.    Correct.

3         Q.    And I'm scrolling down.  This page is

4    Mr. Cobbs' writing but there's no stamp?

5         A.    Uh-huh.  Correct.

6         Q.    And this was another page he's included.

7    There's no warden response or stamp?

8         A.    Correct.

9         Q.    And this is another page he's included, and

10   there's no warden's response or stamp?

11        A.    Correct.

12        Q.    So you don't recall receiving this grievance?

13        A.    If I would have received it, there would be a

14   date stamp on there or some type of date from the

15   grievance office.

16        Q.    Uh-huh.  But you understand Mr. Cobbs to be

17   saying that he never received the response from you on

18   his previous grievance?

19        A.    This is the first time -- I mean, like I

20   said, I didn't log that grievance in.  I don't have a

21   date stamp, so I wasn't aware that he did not receive a

22   copy of his grievance.

23        Q.    Uh-huh.  This is the first time, meaning

24   during this deposition we're talking about right now,

25   this is the first time you have heard --

Examination by Ms. Sifuentes

1        **A.    Unless it was in the paperwork that was sent**
2   **to me.  If I would have received that back in August**
3   **when he wrote it, I would have put a date stamp on it.**
4   **It would have been sent to the warden due to the fact**
5   **that it was marked emergency by the inmate.**

6        Q.   Okay.  So I should probably finish my
7   question before you answer so that we're a hundred
8   percent clear what we're talking about.  So you're
9   saying you did not receive this grievance from
10  Mr. Cobbs?

11       **A.   Correct.**

12       Q.   Because you would have stamped it and sent it
13  to the warden if you had received it?

14       **A.   Correct.**

15       Q.   And did you ever hear from Mr. Cobbs that he
16  did not receive a response to his grievance?

17       **A.   I don't recall.**

18       Q.   Okay.

19       **A.   I don't log that.**

20       Q.   You don't log whether he received a response
21  or not?

22       **A.   If they say they didn't receive a response,**
23  **generally what would happen would be the records office**
24  **or myself would make a copy of the grievance again and**
25  **send it to him.  I don't know if that was done.**

Examination by Ms. Sifuentes

 1     Q.   Okay.  I'm going to stop showing this

 2  document and show you another.  Miss Goins, are you able

 3  to see this document titled Cumulative Counseling

 4  Summary?

 5     **A.   Correct.**

 6     Q.   Ms. Merz, can you mark this as Exhibit No. 8?

 7          (Exhibit No. 8, Cumulative Counseling

 8  Summary, was marked for identification.)

 9     Q.   (By Ms. Sifuentes)  Miss Goins, the

10  Cumulative Counseling Summary has Mr. Nathan Cobbs' name

11  on it, correct?

12     **A.   Correct.**

13     Q.   So it's a summary referring to Mr. Cobbs?

14     **A.   Correct.**

15     Q.   And underneath his name, it says

16  counselor/agent name, Beswick, Matthew?

17     **A.   Correct.**

18     Q.   So is this Mr. Cobbs' correctional counselor

19  at the time of this summary?

20     **A.   No.  If you look down where it says staff**

21  **title over to the right, where all those names are, that**

22  **would have been who the counselor was at the time if it**

23  **says face to face.**

24     Q.   Okay.  So, for example, in this first row it

25  says face to face Evans, Bryan, correctional counselor.

Examination by Ms. Sifuentes

1          **A.    Internal affairs says that his allegations**

2     **were unsubstantiated.  Therefore, I had nowhere to go.**

3     **I mooted it because I can't allow him to press charges.**

4     **I can't give him a transfer.**

5          Q.   What would have happened if internal affairs

6     had said the allegations were substantiated?

7               MS. PATEL:  Objection.  Foundation.  Miss

8     Goins, you can answer the question if you know the

9     answer.

10         **A.    I don't know.  I would assume that there**

11    **would have been -- I don't know what happens in internal**

12    **affairs.  So I don't know what -- if they found staff**

13    **neglect, I don't know what they would have done after**

14    **that.**

15         Q.   (By Ms. Sifuentes)  Have you ever received a

16    grievance where internal affairs tells you that

17    allegations of excessive force were substantiated?

18         **A.    No.  I have received stuff back saying that**

19    **this is still pending an investigation.  They don't let**

20    **me know if they send it to an outside source to be**

21    **investigated or not.**

22         Q.   You understand that sometimes internal

23    affairs sends matters to be investigated by outside

24    sources?

25         **A.    Sometimes, yes.**

Examination by Ms. Sifuentes

1       Q.   What do they tell you when that happens?

2       **A.   That it's being investigated.**

3       Q.   Okay.  Would you have made a recommendation

4   that Mr. Cobbs be transferred depending on the internal

5   affairs result?

6       **A.   Depending on what they would have said in**

7   **their response.  But again, that's really not up to me.**

8   **That would be up to the warden.**

9       Q.   But you could make a recommendation for a

10  transfer --

11      **A.   I've never made a -- I've never made a**

12  **recommendation to be transferred on a grievance.  If you**

13  **see under my responses, there's a CAO's response.  He**

14  **can either concur, not concur or remand back.  He has**

15  **the power to override anything I say.**

16      Q.   Has the CAO ever not concurred with your

17  recommendation?

18      **A.   Yes.**

19      Q.   In what circumstances?

20      **A.   There's times where he may remand it back for**

21  **additional information.**

22      Q.   And then what happens when he remands it back

23  for additional information?

24      **A.   So then what I do is I will copy the inmate's**

25  **grievance again.  I would copy the DOC 0047, which is my**

Examination by Ms. Sifuentes

1    recommendation, along with the warden's signature.  I

2    will highlight the action that he took, so a remand

3    back, and he generally will put in there what he needs.

4         Q.   And then do you prepare another report and --

5         A.   Yeah.  So I keep the original one with it.

6    And then on my second one at the bottom, I'll just put

7    like an addendum, that was remanded back for CAO for

8    additional authorization or information and then go on

9    to put what the response was.

10        Q.   And then do you make another recommendation

11   at that point?

12        A.   Yes.

13        Q.   And when you make your second recommendation

14   or subsequent recommendation, the CAO can either concur,

15   not concur or remand it again?

16        A.   Correct.

17        Q.   Has the CAO ever not concurred with your

18   recommendation?

19        A.   I don't know.  I don't think so, but I really

20   don't know.

21        Q.   Why don't you know?

22        A.   I've been there since 2005 and I just don't

23   recall 15 years of grievances.

24             MS. PATEL:  Rachel, were you asking if the

25   warden did not concur after the second subsequent

Examination by Ms. Sifuentes

1    recommendation or the first recommendation?

2              MS. SIFUENTES:  I'm asking ever.

3              MS. PATEL:  Okay.

4         Q.   (By Ms. Sifuentes)  Has the warden ever not

5    concurred with one of your recommendations?

6         **A.    I don't know.  If he didn't concur, he would**

7    **put why he didn't concur and what steps need to be**

8    **taken.**

9         Q.   When you say you don't know, do you mean that

10   you just don't remember him ever not concurring with

11   you?

12        **A.    I think there's so many wardens here that I**

13   **just don't -- off the top of my head, I do not recall if**

14   **he's never concurred, never not concurred.  I'm sorry.**

15        Q.   I see.  So you don't recall if Warden Watson

16   has ever not concurred with one of your recommendations?

17        **A.    I can't recall if any warden since 2005 has**

18   **not concurred with any of my recommendations.  Mine is**

19   **just a recommendation.  He has the power to do whatever**

20   **he wants.**

21        Q.   You don't recall any instances where they

22   have not concurred with you, though?

23        **A.    No.  Usually, they'll just remand them back**

24   **for additional information.**

25        Q.   Uh-huh.

Examination by Ms. Sifuentes

1      **A.   But as far as the warden specifically not**
2    **concurring, I don't recall.**
3      Q.   Uh-huh.  And you said if he didn't concur, he
4    would write the reason why --
5      **A.   Yes.**
6      Q.   -- in that response?
7      **A.   Yes.**
8      Q.   And usually that would be to get more
9    information?
10     **A.   I would assume, yes, or if he didn't like**
11   **somebody's response or, you know, just for example say**
12   **it was health care.  Health care says he'll be seen on**
13   **September 20th.  And then the warden will say no, I want**
14   **him seen today.  So he can override that.**
15     Q.   Uh-huh.  I understand.  Have you ever made a
16   recommendation that a grievance be upheld or partially
17   upheld where the inmate complains of excessive force?
18     **A.   I don't believe so.**
19     Q.   Have you ever made a recommendation where --
20   sorry -- have you ever made a recommendation where a
21   grievance is upheld or partially upheld where the inmate
22   complains that he was beaten and staff did not give him
23   treatment?
24     **A.   If in his grievance he said he did not**
25   **receive treatment, I would get in contact with health**

Examination by Ms. Sifuentes

1    care, and then they would tell me if he was seen on that

2    date or shortly thereafter for any injuries.

3        Q.   Okay.  We talked about sending the response

4    to Mr. Cobbs' grievances.  I'd like to get back to that

5    for a minute.  You mentioned you have clerical staff

6    that assists you with responding to grievances?

7        A.   They don't respond.  They copy and mail them

8    to the inmates.

9        Q.   The clerical staff makes copies of the

10   grievance responses and files them or mails them to

11   assist you?

12       A.   Correct.  So once I complete a grievance, the

13   inmate's grievance, original grievance with my original

14   response are given to clerical.  They make a copy.  The

15   copy goes to the inmate.  The original goes to his

16   master file.

17       Q.   Who is -- do you remember the clerical person

18   who helped you Mr. Cobbs' grievance?

19       A.   I don't believe so, not at the moment, no.

20       Q.   Do you remember the clerical person who was

21   working with you in May 2018?

22       A.   We had some clerical come and go.  So we're

23   currently without any, so I'm really not sure who at

24   that time it was.  I mean, it could be -- I mean, we can

25   find that information out, because they were assigned to

Examination by Ms. Sifuentes

1    clinical services.

2        Q.   Got it.  Okay.  And then we also talked about

3    when you receive grievances either from the box or from

4    an inmate or from the warden.  I'd like to return to

5    that for just a second.  You mentioned that you stamp

6    grievances with a received stamp; is that correct?

7        A.   Well, it just depends.  If it's an oral

8    grievance, that's going to be answered by the counselor.

9    It does not -- it didn't get a date stamp.  If would

10   just be written in on the date received and forwarded to

11   the counselor.  If it was an emergency, if it's PREA, if

12   it's already been addressed by the counselor or the

13   result was discipline, then yes, I would date stamp that

14   as receiving it at the grievance officer level.

15       Q.   So if you receive a grievance that is

16   indicated by the inmate as emergency, you always stamp

17   it with a received stamp?

18       A.   Yes.

19       Q.   And who has access to the --

20       A.   Well, no.  No.  Can I rephrase that?

21       Q.   Yes, of course.  Clarify.

22       A.   If it's going to go to the warden to be

23   processed, it's not date stamped.  If it is on a time

24   frame, if he didn't put all the components in of a

25   grievance and it needs to be sent back to him, I date

Examination by Ms. Sifuentes

1          MS. SIFUENTES:  I understand.  I'll ask some

2     targeted questions.

3          Q.   (By Ms. Sifuentes)  Miss Goins, were you

4     aware of an investigation by internal affairs into

5     another inmate's death around the same time that you

6     sent Mr. Cobbs' grievance for investigation by internal

7     affairs?

8          MS. PATEL:  I will object to the question.

9     Form and foundation and because this is a discovery

10    deposition regarding Mr. Cobbs.  Mr. Goins, if you can

11    answer, you may respond.

12         **A.   No.**

13         Q.   (By Ms. Sifuentes)  And you mentioned that

14    you can follow up with internal affairs when they

15    haven't responded to your request for information; is

16    that correct?

17         **A.   Correct.**

18         Q.   Why didn't you follow up with regards to

19    Mr. Cobbs investigation?

20         **A.   I don't know if I followed up or not.**

21    **Generally, what I would do is say hey, it's been 30,**

22    **45 days.  I haven't received a response yet.  I need to**

23    **get a response to that grievance.**

24         Q.   Okay.  Now, you said that you sent Mr. Cobbs'

25    grievance to internal affairs shortly after you received

Examination by Ms. Sifuentes

1    it back from the warden, correct?

2       **A.    Correct.**

3       Q.    And you received the response back from the

4    warden on January 19th, 2018?

5       **A.    If that's what my date received says.  I**

6    **don't have that paperwork in front of me.**

7       Q.    That's fair.  I can show it to you in just a

8    second.  I think we marked this Exhibit 1.  This is your

9    grievance report on Mr. Cobbs' grievance, and this is

10   the date received, correct, January 19th, 2018?

11      **A.    Correct.**

12      Q.    So this is when you received Mr. Cobbs'

13   grievance back from the warden for emergency processing,

14   correct?

15      **A.    Correct.**

16      Q.    And you sent it to internal affairs shortly

17   thereafter?

18      **A.    Yeah.  Subsequently that day or if it's on a**

19   **Friday, it might not be till Monday, depending on what**

20   **time I get it back from the warden's office.**

21      Q.    Within a couple of days of receiving it from

22   the warden, you would have sent it to internal affairs?

23      **A.    Correct.**

24      Q.    So in January 2018?

25      **A.    Correct.**

Examination by Ms. Sifuentes

Page 105

1          Q.    And I believe earlier you said you would have
2    written this report shortly after receiving a response
3    from internal affairs?
4          **A.    Yes, I would have interviewed the inmate**
5    **after I got the response back.**
6          Q.    Okay.  You would have interviewed Mr. Cobbs
7    after you received the response from internal affairs?
8          **A.    Correct.**
9          Q.    Shortly thereafter?
10         **A.    Correct.**
11         Q.    And you interviewed Mr. Cobbs in May 2018?
12         **A.    Yes, it would have been.  That's when I**
13    **answered the grievance was May 25th, it looks like.**
14         Q.    So you would have received the response from
15    internal affairs in May 2018?
16         **A.    Yeah.  I would say yes.  I mean, I don't have**
17    **that specific date on which they sent it to me.**
18         Q.    Do you have any records of when you receive
19    responses from internal affairs on these grievances?
20         **A.    No.**
21         Q.    But you think it would have been shortly
22    after you interviewed Mr. Cobbs and prepared this
23    report?
24         **A.    Correct.**
25         Q.    So you sent the grievance to internal affairs

Examination by Ms. Sifuentes

1 for review in January 2018, and you received the

2 response sometime in May 2018?

3  **A.  Correct.**

4  Q.  Typically -- no, let me start over.  How long

5 of a time is that?  Just a few months, right, a few

6 months before you received a response from internal

7 affairs?

8  **A.  Correct.**

9  Q.  Typically, would you check in after two,

10 three months or more has passed to get a response from

11 internal affairs?

12  **A.  I don't have a set date on when I would check**

13 **in with anybody on an emergency grievance.**

14  Q.  Uh-huh.  But you sometimes do check in?

15  **A.  Yes.**

16  Q.  Why do you check in?

17  **A.  Just to let them know I'm needing a response**

18 **to get that grievance completed.**

19  Q.  And why do you need to -- what are the

20 circumstances where you are asking for a response?

21  **A.  Because I see that I haven't gotten a**

22 **response back from the department in which I sent it to.**

23 **So I give them a courtesy call saying, hey, I need this**

24 **grievance responded to so I can complete my portion of**

25 **the grievance.**

Further Examination by Ms. Sifuentes

Page 114

1              (Reporter clarifies transcript orders.)

2              MS. SIFUENTES:  Yes.  Can I have my assistant

3      contact Pohlman?

4              MS. PATEL:  PDF with exhibits.

5              (Whereupon, signature was waived, and the

6      witness was excused at 12:44 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE

2

3          I, SHERRIE L. MERZ, Registered Diplomate
    Reporter, Certified Shorthand Reporter and Certified
    Court Reporter, do hereby certify that there appeared
4    before me by video conference,

5                    TARA GOINS,

6    who was by me first duly sworn to testify to the truth
    and nothing but the truth of all knowledge touching and
7    concerning the matters in controversy in this cause;
    that the witness was thereupon carefully examined under
8    oath and said examination was reduced to writing by me;
    and that this deposition is a true and correct record of
9    the testimony given by the witness.

10

11          I further certify that I am neither attorney
    nor counsel for nor related nor employed by any of the
    parties to the action in which this deposition is taken;
12    further, that I am not a relative or employee of any
    attorney or counsel employed by the parties hereto or
13    financially interested in this action.

14

15          IN WITNESS WHEREOF, I have hereunto
    subscribed my name this 17th day of September, 2020.

16

17

18          _____
             SHERRIE L. MERZ, RDR, CSR, CCR

19

20

21

22

23

24

25