1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF ILLINOIS

3

4
NATHAN COBBS,                        )
5                                    )
            Plaintiff,               )
6                                    )   Civil No. 3:18-03205
        vs.                          )
7                                    )
LIEUTENANT SHUFFLIN, et al.,         )
8                                    )
            Defendants.              )
9

10         TRANSCRIPT OF RECORDED PROCEEDINGS
       BEFORE THE HONORABLE JONATHAN E. HAWLEY
11             STATUS CONFERENCE HEARING
             JANUARY 7, 2021; 2:33 P.M.
12                PEORIA, ILLINOIS

13
APPEARANCES:
14

15   For the Plaintiff:      RACHEL F. SIFUENTES, ESQUIRE
                             JAMES P. GAUGHAN, ESQUIRE
16                           Riley Safer Holmes & Cancila, LLP
                             70 W. Madison Street, Suite 2900
17                           Chicago, Illinois 60602

18
     For the Defendants:     HINAL AKSHAY PATEL, ESQUIRE
19                           Office of the Attorney General
                             500 S. Second Street
20                           Illinois, 62701

21

22              Transcribed By:
          Jennifer E. Johnson, CSR, RMR, CRR
23          U.S. District Court Reporter
            Central District of Illinois
24
Proceedings recorded by electrical sound recording;
25   proceedings recorded by mechanical stenography from
said recording; transcript produced by computer

1          THE CLERK:  Calling the case of Cobbs vs.

2  Walton (sic), et al., Civil Case 18-3205.

3          Counsel, please enter your appearance.

4      MS. SIFUENTES:  This is Rachel Sifuentes,

5  appointed counsel for Plaintiff, Mr. Cobbs.

6      MR. GAUGHAN:  Jim Gaughan also on behalf of

7  Mr. Cobbs.

8      MS. PATEL:  Hinal Patel with the Attorney

9  General's Office on behalf of the defendants.

10      THE COURT:  This is Magistrate Judge Jonathan

11  Hawley.  This matter is set for a hearing.  I

12  granted a motion for hearing concerning discovery

13  disputes pursuant to my standing order that was

14  filed by Miss Patel.

15      Miss Patel, if you'd like to update me on the

16  nature of the dispute?

17      MS. PATEL:  Yes.  Thank you, Your Honor.  The

18  defendants would -- were hoping to discuss a

19  protective order regarding the -- a line of

20  questioning that is going to be asked at the

21  defendants' depositions.  Opposing counsel had

22  confirmed that they had intended to ask the

23  defendants during their depositions about any

24  ongoing civil or criminal litigation regarding the

25  use of excessive force and are aware that there is

1   pending litigation regarding this specifically, a
2   civil and criminal litigation with Inmate Larry
3   Earvin.
4       It's my understanding that opposing counsel --
5   we've discussed back and forth this, this issue --
6   believe that this line of questioning would be
7   relevant and permissible.
8       The defendants would argue that, under Rule
9   26, the line of questioning is certainly outside
10  the scope of this lawsuit and, therefore,
11  irrelevant and would, in short, Your Honor, request
12  some type of protective order to prohibit the line
13  of questioning regarding litigation involving
14  Inmate Larry Earvin, Your Honor.
15      THE COURT:  Okay.  Miss Sifuentes or
16  Mr. Gaughan?
17      MS. SIFUENTES:  Yes, Your Honor.  My
18  understanding is that the Court has essentially
19  addressed the argument that Plaintiff is raising
20  before.  I will say I'm not sure that -- well, to
21  more fully explain the issue, we do intend to ask
22  at Defendants' depositions about specifically prior
23  acts of their own excessive force involving a
24  handcuffed, a restrained inmate that was beaten by
25  one or more of the defendants.  And as Miss Patel

1   says, this would include an incident involving an

2   Inmate Larry Earvin.

3       And as I said, these issues have been raised

4   before because we had the hearing before Your Honor

5   on the written discovery related to these, these

6   exact issues.  We issued interrogatories and

7   document requests, and Your Honor ruled at that

8   time, contrary to what Plaintiff (sic) is saying

9   now, that those prior incidents were relevant.

10      Now, Your Honor has said, you know, incidents

11  for issues like use of pepper spray or use of force

12  during a riot, those kinds of things are not

13  relevant, and so we limited our scope of discovery

14  to the type of issues that the Court had ruled were

15  appropriate for written discovery on, and we have

16  gotten responses from Defendants on those written

17  questions.  So, what we seek to do now is to get

18  oral discovery on those same issues.  And --

19      THE COURT:  Let me -- let me ask Miss Patel,

20  do you agree, Miss Patel, that I had allowed a

21  limited scope inquiry into the written discovery as

22  it relates to what they're seeking to inquire into

23  during the deposition?

24      MS. PATEL:  I, I hope I'm understanding you

25  correctly.  I, I understand that when we previously

1   had a discovery dispute regarding the written

2   discovery in the fall, I, I believe that you had

3   given them an opportunity to revise the questions

4   and resubmit them, and we had responded to them.  I

5   don't know if we had objected to some of them or

6   not.

7       I don't think we ever discussed depositions or

8   anything like that, though, if I'm understanding

9   you.

10      THE COURT:  Right.  So -- but I'm saying, did

11  I allow written discovery just confirming what

12  Miss Sifuentes argued?

13      What she's basically saying is, look, you have

14  previously -- based on the previous discovery

15  dispute we had that relates to written discovery,

16  you had granted us written discovery on the same

17  limited issue that we want to inquire into during

18  the deposition.

19      So -- and I guess let me ask, Ms. Sifuentes,

20  what you are -- you're not asking to ask any

21  questions that are greater in scope than what I

22  allowed in the written discovery?  Like that's what

23  you want to ask about.  What I allowed for written

24  discovery, you want to be able to ask in the

25  depositions as well and nothing more.  Is that a

1  fair statement?

2      MS. SIFUENTES:  Yes, Your Honor, that's a fair

3  statement.  The defendants disclosed the Earvin

4  suit and certain other past incidences, ongoing and

5  closed actions, and those are the ones we want to

6  ask about.

7      THE COURT:  Okay.  And well -- and so,

8  Miss Patel, what I was asking you was, do you agree

9  that I had allowed that -- and, I mean, obviously,

10  you provided that discovery to them, that there is

11  a limited circumstance of prior instances involving

12  allegations of excessive force which I allowed

13  written discovery to be provided and that you did

14  provide that information?

15      Do you agree with that?

16      MS. PATEL:  Yes.  We did provide responses to

17  their revised discovery, and in it we -- yes, we

18  did.  Yes, Your Honor.

19      THE COURT:  Okay.  So, I guess my question to

20  you, Miss Patel, is if I had said that that

21  information was discoverable under Rule 26 for

22  purposes of written discovery, to the extent that I

23  allowed it and no more than that --

24      MS. PATEL:  Uh-huh.

25      THE COURT:  -- why would they not be allowed

1   to explore the same question in a deposition?

2   Understanding that none of this may ultimately be

3   admissible so, you know, I, I don't -- that's a

4   separate question.  So, whether any of that will

5   come in at the end of the day is a question for

6   motions in limine later down the road.

7      But from a discovery point of view, if I had

8   previously held that inquiry into the same area in

9   writing was permissible, why would I say it's not

10   relevant to inquire into for purposes of a

11   deposition?

12      MS. PATEL:  Your Honor, our concern is, is

13   we've responded to the revised interrogatory

14   questions and, and -- regarding the defendants'

15   involvement in other cases.

16      The, the issue is that at the deposition,

17   it's, it's not clear -- I mean, it's my

18   understanding that they're going to ask about

19   specific questions regarding their involvement in

20   these cases, all of the defendants, and my concern

21   with that is -- or, you know, the defense's concern

22   with that is there are -- there are serious issues

23   regarding, of course, as Your Honor stated, at the

24   trial level in terms of evidence, in terms of

25   whether it's relevant, but it's, it's highly

1  prejudicial for the line of questioning to be made

2  to these defendants because it's -- we've got three

3  defendants here, Your Honor.  Two of them are

4  currently in civil litigation which is open and

5  pending, and one of those individuals is currently

6  involved in the civil case as well as ongoing

7  federal criminal charges which, my understanding,

8  is an open investigation at this time.

9       The concern is, is to ask this line of

10  questioning in a deposition, it would, would

11  seriously threaten his Fifth Amendment privileges

12  and could possibly be highly prejudicial to this

13  open and ongoing criminal case as well as possible

14  civil case.

15       THE COURT:  Well, he can certainly assert his

16  Fifth Amendment privilege as it relates to the

17  ongoing criminal case, this particular -- is it

18  just one of the defendants that was involved, or

19  are we talking more than one in this --

20       MS. PATEL:  Defendant Lindsay and Defendant

21  Sheffler are both currently involved in open and

22  pending civil litigation, and there is a criminal

23  charge -- criminal charges also being brought

24  around the same nucleus of the events regarding

25  this inmate in which Mr. Sheffler has been

1  indicted.

2      THE COURT:  Okay.  So, obviously -- look, I

3  mean, Mr. Sheffler has, has the right to invoke his

4  Fifth Amendment privilege.

5      But the other question is, I, I -- I guess my

6  question to you is -- I mean, I understand your

7  concern, and I understand the concerns of your

8  client.

9      I, I guess the question is, what is the legal

10  rule -- I've already previously ruled that inquiry

11  into these matters, at least generally for purposes

12  of written discovery, were discoverable.  And so

13  while I understand your clients' concern, I don't

14  know what legal principle would be the basis for

15  saying that these lines of questioning could not be

16  asked.

17      MS. PATEL:  I understand, Your Honor.  And we

18  would just argue essentially that we've provided

19  their involvement in other cases.

20      When sitting for a deposition, the line of

21  questioning isn't going to be limited to, Okay.

22  What, what, what was your involvement in other

23  cases regarding the use of excessive force?

24      The line of questioning could divulge deeper

25  into, Well, what, what was your interactions with

1  Inmate Earvin or another inmate regarding another
2  point in time, another lawsuit entirely outside the
3  scope.
4      And I think, with that, there is a serious
5  issue with undermining both the civil -- his civil
6  case pending and his criminal case pending.  That's
7  just my concern.  I understand the --
8      THE COURT:  Well, I -- and I get that.
9      I guess my question to Plaintiff's Counsel is,
10  when I'm thinking about this issue, it's one thing
11  to be able to inquire into, Have you -- Has there
12  been an allegation against you regarding excessive
13  use of force for someone who's in handcuffs?  You
14  know, Did you admit or deny that con-- you know,
15  Did you -- Did you admit liability or not?  And
16  then, Do you contest it?  What's the status of that
17  case as it exists?  How did the court rule?  It
18  hasn't ruled yet.  Or, Have you been charged?
19      That's -- that, to me, seems like information
20  that could potentially be litigated in this case
21  and could eventually get admitted.
22      But to ask these particular defendants, Well,
23  what did you do in this case, or, What's your
24  version of events, or -- like at that point, you're
25  going to be getting into a minitrial.

1    The only way to get this information in, if
2  it's going to get in at all in this case, is going
3  to be, you know, Was there an allegation made?
4  Yes.

5    Was there a finding on that allegation?

6    You know, What was the allegation?  It was
7  this.

8    Did you deny the allegation?  Yes, I did.

9    What -- Was there anybody that ultimately made
10  a finding regarding that?  Yes, they dismissed it
11  as frivolous, or, Yes, they found that I had used
12  excessive force in punishment.

13    And I don't know how any of that information
14  would affect sort of substantive rights that relate
15  to the -- whether or not the underlying conduct did
16  or did not occur.  These are all facts related to
17  either someone else adjudicating it or an
18  allegation made by someone else.

19    So, do you want to inquire beyond that kind of
20  information, Plaintiff's Counsel?  Because I assume
21  the information that was provided to you in
22  discovery is of a nature that I discussed.  That it
23  doesn't -- it doesn't set forth -- anything that
24  would relate to what the defendants might testify
25  would be no more than, This is what happened as far

1  as the allegation.  This -- I mean, This is the
2  allegation that was made.  This is the process that
3  happened.  I denied the allegation, and -- but
4  there's no like, Tell us what you -- Tell us your
5  version of events of what happened.
6      I mean, that would be correct as it relates to
7  your written discovery that you had received,
8  correct?
9      MS. SIFUENTES:  That would be correct, Your
10  Honor.
11      THE COURT:  Are you seeking to inquire beyond
12  sort of the, the, the factual questions that I have
13  outlined regarding procedurally, What was the
14  allegation?  What was -- How was it resolved?  Did
15  you admit it or deny it?
16      I mean, are you trying to get into the
17  underlying facts of those beyond what was, you
18  know, beyond what might be in the allegations or
19  some statement that a defendant may have made in
20  writing, et cetera?
21      MS. SIFUENTES:  Yes, Your Honor, I think we
22  would be seeking both what you're saying and also
23  some development of the facts of the particular
24  instance for a few reasons.
25      First of all, with particular regard to Inmate

1  Earvin, the incident happened a couple months
2  before the incident involving Mr. Cobbs, and
3  Mr. Cobbs' grievance was pending at the time that
4  the, the incident with Mr. Earvin occurred.  And
5  it's our understanding -- we have testimony during
6  the administrative remedies phase of this case that
7  the grievance regarding -- for Mr. Cobbs was
8  sitting on the desk of, of people.  It wasn't being
9  addressed; no questions were being asked;
10 defendants were not being interviewed.
11     And then when this incident with Mr. Earvin
12 happened that led to Mr. Earvin's death, all of a
13 sudden action was taken for Mr. Cobbs.  Questions
14 were asked; denials were made.
15     So, there is some, some overlapping factual
16 relevance here --
17     THE COURT:  I don't -- I don't know why -- any
18 of those facts that you just recounted to me, those
19 all sound like facts that would fall within -- like
20 these are things that are -- that the defendants
21 not -- these are facts procedurally about what
22 happened:  Was there a complaint pending against
23 you prior to the incident that's alleged to have
24 occurred here involving X?  Yes.
25     Was any action taken on that prior to this?

1  No.

2      After this incident, was there then action

3  taken?  Yes.

4      I mean, again, those are just questions that

5  are fact questions, don't relate to the defendant

6  admitting or denying or elaborating on what the

7  underlying facts would be.

8      Miss Patel, do you have an issue with her

9  asking those types of questions?  I mean, assuming

10  -- I understand your relevance objection, but if I

11  overrule the relevance objection and say, well,

12  that's, that's sort of the scope, we're not getting

13  into a dangerous area for the defendants, what's

14  your position as it relates to those kind of

15  questions?

16      MS. PATEL:  Your Honor, there's -- the, the

17  incident regarding Mr. Cobbs occurred several

18  months before the incident regarding Mr. Earvin,

19  and a lot of what plaintiff's counsel bring up were

20  questions they originally had discussed when they

21  had taken depositions for the exhaustion motion.

22  And I, I don't -- again, I, I don't see how --

23  it's, it's, it's -- I -- it's not even

24  circumstantial, I'd say.  It's just -- it's

25  grasping at making conclusions about how a

1   grievance was processed because of -- because of a

2   specific like date stamped on a grievance form.

3        I don't see how that --

4        THE COURT:  All right.  I --

5        MS. PATEL:  -- (inaudible) a further line of

6   questioning as it pertains to this case.

7        THE COURT:  Well, I, I, I guess -- here's what

8   I would say, okay.  To the extent that, you know,

9   as far as the information that I allowed to be

10  gathered in a written discovery that relates to any

11  prior incidents, I do believe limited questioning

12  is appropriate into that area.

13       But I want to be clear that those questions

14  need to be about the timing of allegations, the

15  nature of the allegations, the procedure.  These

16  are -- the facts -- factual things that are in the

17  record, not an underlying inquiry into the merits

18  of the complaint because, at the end of the day,

19  there's no way you're going to be able to get in a

20  dispute regarding the merits in this case.

21       We're not going to have a -- the one thing I

22  know is to the extent any of this will ultimately

23  be admissible, it's not going to be admissible to

24  the extent that we're going to have a minitrial on

25  whether or not the defendants had committed some

1   other conduct.  It's one thing to say, Was there an
2   allegation?
3        There's another thing to say, Was there an
4   adjudication?  Yes.
5        What was that adjudication, whatever it may
6   be.
7        And -- but beyond that, to try then to go
8   below those sort of historical facts about what was
9   alleged, what the process was, I don't see any harm
10  to any of these defendants to answer those
11  questions.  Those are questions that are -- have
12  nothing to do with whether they did or did not
13  engage in any conduct.  But to try and get into the
14  merits of whether or not the allegation was
15  sustained or not or was properly denied or what
16  were the actual facts according to you, unless
17  you've already created a written document to that
18  effect, you know, you're not going to be able to
19  get underneath whatever stage it is.  If it's
20  purely an allegation, it's just an allegation.
21  You're not going to be able to introduce at this
22  trial whether or not that allegation was or was
23  not, you know, substantiated unless there's someone
24  to substantiate it or said it wasn't substantiated.
25  That's just getting too far, and there's no way

1 | that's coming in.

2 | So, to the extent that you want to inquire,

3 | you know, about historical details regarding what

4 | the allegations were, how they were processed, what

5 | any adjudication was, I have no problem with an

6 | inquiry into that nature to the extent that you're

7 | staying within the bounds of what written discovery

8 | was asked.

9 | But if you're asking these defendants, you

10 | know, "What did you actually do in this case?" if

11 | it's beyond what they've already provided in

12 | writing, I just don't -- I don't think it's going

13 | to come in.  I don't think it's going to be

14 | relevant.  So, I think it's appropriate for limited

15 | scope to not go beyond what I've just defined.

16 | Now, I think it could be tricky when you do

17 | the deposition, you know, to know whether you're

18 | stepping over the line or not.  You know, I would

19 | encourage you both to include me on an email when

20 | you know exactly when these depositions are going

21 | to be.  If you have a dispute that relates to the

22 | scope of my order, try to get me on the line, and

23 | I'll try and get on there so we don't have to redo

24 | that.  But -- so, that's -- anyone have any

25 | questions about the scope of what I'm going to

1  allow?

2      And, of course, your client can always assert

3  his Fifth Amendment privilege.  He always has that

4  right.

5      Any question about the scope of that?

6      MS. PATEL:  I had a question, Your Honor.

7  This is Hinal Patel for the defendants.  You were

8  -- you were mentioning historical details about

9  allegations, how they were processed, what the

10  adjudication was.  Were you referring to what they

11  were asking, if a line of questioning was regarding

12  other instances of the use of excessive force, or

13  were you referring to -- I think what one

14  plaintiff's counsel was discussing is grievances

15  being responded to concurrently with the -- what

16  happened with Mr. Earvin.  I wasn't sure.  I wasn't

17  following that.

18      THE COURT:  Well, I would say that whatever

19  was in the -- whatever was -- I mean, again, I, I,

20  I suppose that the grievances, if there were any,

21  that's part of what you produced in the written

22  discovery.  Is that fair?

23      MS. PATEL:  They were produced, and, and some

24  of the questions that opposing counsel had brought

25  up about the grievances and when they were

1   responded to were actually asked in the previous

2   depositions that they had taken before, when we had

3   filed the exhaustion motions, Your Honor.

4        THE COURT:  So, of these same defendants?

5        MS. PATEL:  No, no, no, of the -- I think it

6   was the grievance officer and the ARB individual.

7        THE COURT:  I mean, to the extent that if --

8   you know, for those grievances, I think it's

9   appropriate to say, Are you aware that, you know,

10  of any grievances that -- or, Was there a grievance

11  filed?  They may say yes.

12       Do you know what the grievance said?  No.

13       Again, are -- if they ask, Did you, you know

14  -- you know, again, I think if you want to ask them

15  about -- I don't know how you're going to get much

16  more information than you already have, but if you

17  want to ask them, Was there a grievance filed?

18  Yes.

19       Did you, you know, deny it?  Yes, or whatever

20  it may be.

21       And how was that adjudicated?

22       I mean, I think if they've already got the

23  grievances in discovery, and they're already aware

24  of them, again, I don't see how it's any different

25  than the -- asking about pending litigation.

1      MS. PATEL:  My other question, Your Honor, was

2  whether -- I think the defendants have provided

3  quite thorough responses to the revised

4  interrogatories, and it kind of addresses, you

5  know, the questions that may be asked regarding

6  involvement in other cases regarding excessive

7  force, you know, current status of those cases.  I

8  think we had responded to those quite thoroughly in

9  those revised questions.

10     I was wondering if there was anything

11  specifically lacking that opposing counsel wanted

12  to follow up on or if, if -- as we've stated, the

13  questions would really revolve around basically

14  what was already kind of responded to in written

15  discovery.

16     THE COURT:  I mean, I, I agree with you that

17  from the manner in which I'm limiting the level of

18  inquiry, they're really not going to get much more

19  than what they've gotten in the interrogatories,

20  but they may have a few details surrounding the,

21  you know, information that they wanted

22  clarification on or ask about.  But, I mean, I

23  would expect you're probably correct.

24     But again, just because you responded to

25  something in an interrogatory, I mean, that doesn't

1   mean you can't ask -- and that happens all the

2   time, right?  You get interrogatories.  You get

3   information.  Then you do oral discovery, and you

4   ask about the same stuff that you got in the

5   interrogatories because asking someone questions,

6   depending on their answers, the follow-up could be

7   slightly different.

8        MS. PATEL:  Right.  Right.  That makes sense,

9   Your Honor.  I just wanted to make sure -- I wanted

10  to -- I wanted to make sure I had a clear

11  understanding in terms of the line of the types of

12  questioning ruled out and the types of questioning

13  that generally would not be allowed.  And it looks

14  like, if I'm understanding correctly, questions

15  regarding the defendants' versions of the facts in

16  either Mr. Earvin's case or, I guess -- I guess it

17  can apply to other instances of use of excessive

18  force would not be -- would not be permissible.  Is

19  that -- is that correct?

20       THE COURT:  Correct.  Unless they want to ask

21  about a document where their, their version is, you

22  know, documented.

23       But again, I mean, they can ask questions

24  about things that are formally adjudicated where

25  you have documents and the process is -- they can

1  ask them about the documents or the claim or, Did

2  you -- Did you, in this document, deny the

3  allegation, or, you know -- but, but beyond that,

4  no.  Not trying to get beyond the record that's

5  already been created --

6       MS. PATEL:  Okay.

7       THE COURT:  -- whatever that may be.

8       MS. PATEL:  I think I understand.  Thank you,

9  Your Honor.

10      THE COURT:  Okay.  Miss Sifuentes, do you

11  understand the scope of my order?

12      MS. SIFUENTES:  I do, but I also have a, a

13  question to raise and in relation to what

14  Miss Patel just raised which was about, you know,

15  versions of the facts.

16      Are we also being precluded from developing

17  impeachment-related evidence?  And I raise this

18  issue because we're, we're in discovery.  We do not

19  know what these defendants are going to say, and

20  I'm concerned that, you know, when we ask them

21  questions about the, the facts of this case, you

22  know, that they may say, This kind of -- I've never

23  dealt with this kind of thing before.  I don't know

24  how I would even begin to carry out the, the

25  incident that's alleged here.

1    And then we would want to impeach that with
2  evidence from prior events, based on their prior
3  knowledge, based on plans that they --
4    THE COURT:  You could say, Well, weren't you
5  previously accused of using excessive force?
6    That's precisely why I'm allowing you --
7  that's why I allowed this evidence in the first
8  place is because if they're saying lack of
9  knowledge or you could say, Well, weren't you
10  previously, you know, accused of having used
11  excessive force on -- against this particular
12  person?
13    Well, yes, I was, now that you -- you know.
14    And how was that resolved?
15    And, I mean, that's, that's precisely what you
16  can use as impeachment.  I'm not -- I mean, that's
17  the information that I precisely want -- I have
18  allowed you to get for that very purpose.
19    But if the allegation has -- is still pending,
20  it proves nothing because it's just an allegation.
21  If the allegation has been adjudicated and they
22  found that he used excessive force, then you have
23  that to use.  If the allegation was adjudicated and
24  found to be unsubstantiated, what I'm saying is I'm
25  not letting you then try to show that, in fact, he

```
 1  did use excessive force beyond what the
 2  adjudication is because then we're getting into a
 3  minitrial on the other allegations.
 4      So, I don't think it in any way limits your
 5  ability to impeach.  You're, you're -- I'm
 6  specifically allowing you to ask about the
 7  existence of those instances of which you've
 8  already received discovery on.
 9      MS. SIFUENTES:  Understood, Your Honor.  Thank
10  you for the clarification.
11      THE COURT:  Okay.  Okay.  I have to run to a
12  3:00 court meeting.  Were there any other issues
13  that -- do we need to reconvene for any other
14  issues, or was that the only one?
15      MS. PATEL:  I think -- I think that's all,
16  Your Honor.  And we'll inform you of the dates for
17  the deposition in case there are things that, you
18  know, come up during the deposition that may need
19  to be addressed by the Court.
20      THE COURT:  Okay.  Great.
21      Miss Sifuentes, we're good?
22      MS. SIFUENTES:  Yes, Your Honor.  Thank you.
23      THE COURT:  Okay.  All right.  Thank you.  You
24  all have a good day.
25      MS. PATEL:  Thank you.
```

1        MR. GAUGHAN:  Thank you very much, Your Honor.

2        (Proceedings concluded.)

3

4

5

6

7

                  CERTIFICATE OF OFFICIAL REPORTER

8

9

         I, Jennifer E. Johnson, CSR, RMR, CBC, CRR,
10   in and for the United States District Court for the
     Central District of Illinois, do hereby certify
11   that pursuant to Section 753, Title 28, United
     States Code that the foregoing is a true and
12   correct transcript of the recorded proceedings held
     in the above-entitled matter and that the
13   transcript page format is in conformance with the
     regulations of the Judicial Conference of the
14   United States.

15        Dated this 13th day of January, 2021.

16

17                  /s/ Jennifer E. Johnson
                    JENNIFER E. JOHNSON
18                  CSR, RMR, CBC, CRR
                    License #084-003039
19

20

21

22

23

24

25